No. 16,665.

TRANSAMERICA CORPORATION *v*. MERRION ET AL.
(255 P. [2d] 391)

Decided January 26, 1953. Rehearing denied March 24, 1953.

Messrs. BANNISTER, WELLER & FRIEDRICH, Mr. ARTHUR V. TOUPIN, for plaintiff in error.

Messrs. MYERS & SNERLY, Messrs. PENDER & SHAFER, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared in the trial court where plaintiff in error was plaintiff, and defendants in error were defendants.

The action was brought to obtain a judgment for damages for an alleged conversion of sheep by defendants. Plaintiff's amended complaint consisted of eleven causes of action, in each of which it was alleged: that defendants wrongfully took possession of a specific number of lambs which had theretofore been mortgaged to the assignor of plaintiff; that defendants wrongfully removed said lambs from the State of Oregon and converted them to their own use; and that the chattel mortgages upon said sheep were executed by one Boylen and his wife and were recorded in Oregon in compliance with the provisions of the laws of that state, and constituted a valid first lien upon said sheep. The prayer of plaintiff's complaint was for judgment on all the causes of action in the aggregate amount of $51,236.35 damages, with interest and costs.

Defendants in their answer admitted that certain lambs

were sold to them by Boylen and delivered to them in Oregon. They further admitted that certain other lambs were delivered to them at Ogden, Utah, and Chicago, Illinois, and they alleged that these lambs were received by them in their capacity as registered, licensed, livestock commission merchants under the federal Packers and Stockyards Act of 1921 as amended, and that the said lambs were sold in the regular course of business for the account of Boylen.

Defendants denied that plaintiff had any valid lien upon any of the lambs in question by reason of the chattel mortgages upon which it relied. They alleged, as affirmative defenses, that the mortgages in question were void, as a matter of law, for indefiniteness and uncertainty in describing the sheep covered thereby, and for insufficient description of the area within which the said mortgaged sheep were located; that a large number of sheep purchased by defendants from Boylen were not owned by him at the time of the execution of the chattel mortgages, but were in fact owned by the Vey estate or by one R. E. McGreer, or by other persons unknown; that plaintiff or its predecessor in interest waived any lien under said chattel mortgages, either by express or implied consent that the mortgagor Boylen could himself sell and ship the mortgaged sheep and transmit the proceeds of such sales to plaintiff until the secured indebtedness was paid in full; and that the action as related to shipments received by defendants in Utah was barred by the statute of limitations of that state and by reason thereof could not be maintained in Colorado. Although the answer contains twenty-seven separate defenses the issues essential to a determination of the action are raised by those hereinabove specifically mentioned.

Trial was to a jury. At the conclusion of the evidence defendants moved for a directed verdict upon thirteen grounds, one of which was: "Because it appears undisputed from the evidence with any probative force and

effect that the morgagor, Tom Boylen, Jr., had at all times in question, the expressed or implied authority of the plaintiff to at any times sell the livestock in question, including lambs, and to collect the proceeds therefrom, and that the plaintiff by such expressed or implied authority, waived its mortgage lien and thus prevented the plaintiff from maintaining this action." The trial court reserved its ruling on this motion, and the cause proceeded to conclusion and verdicts of the jury.

Separate verdicts were returned on each cause of action, six of which were in favor of defendants. Upon plaintiff's first, second, fourth, fifth and eighth causes of action the issues were found in favor of plaintiff and damages awarded in the total sum of $30,764.62. The five alleged causes of action upon which verdicts for plaintiff were returned are the only ones involved on this review, since no cross specification of points is directed at the verdicts and judgments entered in defendants' favor on the remaining six causes of action.

Within the time allowed, attorneys for defendants filed their motion in which they requested the court to pass upon defendants' motion for a directed verdict on which a ruling previously had been reserved, and asked for the entry of judgment in favor of defendants, notwithstanding the verdicts, or, in the alternative, for a new trial. This motion was submitted September 30, 1950, and was taken under advisement. On November 2, 1950, the court granted defendants' motion and entered judgment in their favor on all the causes of action, notwithstanding the verdicts of the jury. Plaintiff, seeking a reversal of this judgment, brings the case here by writ of error.

From the court's findings and judgment we quote the following:

"The defendants have pleaded many defenses to the complaint, but relied primarily upon two main contentions going to all causes of action in urging the court to enter judgment for the defendants. These two principal

defenses are, first, that the mortgages given plaintiff by Tom Boylen and wife are invalid and void because of improper, insufficient and inadequate description of the property intended to be pledged as security for the loans, and also because in said mortgages a lesser out of a larger number of sheep were described and pledged. Second, that plaintiff bank, mortgagee, gave its general consent to Boylen, mortgagor, to sell property covered by the mortgages, and that such general consent constitutes a waiver of the lien of the mortgages and bars the plaintiff of its right to set up its mortgages against the title of the defendants.

"The court instructed the jury at the trial that the mortgages were valid, so that issue was eliminated from their deliberations. The court told the jury on the question of consent, that a general consent to sell could be inferred from acts of the mortgagee, and that if from those acts shown by the evidence the jury found and believed that the plaintiff *intended* to give a general consent to sell, then the lien of the mortgages was waived and lost and their verdict should be for the defendants.

"Plaintiff bank did not have specific knowledge of the sales of the lambs by Boylen to defendants until after the sales had been consummated, and defendants, at the time of the purchase of the lambs, had no actual knowledge of the existence of the mortgage liens held by the bank. On the contrary, Boylen represented to defendants, prior to the sales, that the lambs were unencumbered and free from liens. The mortgages, however, were recorded in the State of Oregon in conformity with the statutes of that State, and consequently defendants had constructive notice of the existence of the mortgages on the lambs."

It is clear that the judgment of the trial court was based entirely upon its finding that plaintiff had given a general consent to Boylen to sell the mortgaged property and thus had waived the mortgage lien.

Counsel for defendants have divided their brief and argument into two distinct parts. In the first section they argue that the trial court was correct in finding, as a matter of law, that plaintiff granted to Boylen a general consent to sell the mortgaged sheep, and thus waived its mortgage lien. In the second section they assert that there are several other grounds upon which the trial court should have directed a verdict in favor of the defendants. In order that these questions might be raised, they filed cross specification of points and a lengthy supplemental abstract of record covering evidence applicable to these points. Only in the event that we determine that error was committed by the trial court in making the specific finding which formed the basis of its judgment will it be necessary to consider the second section of defendants' brief.

Questions to be Determined.

First: *Must we say, as a matter of law, that under all the evidence bearing upon the question of plaintiff's alleged waiver of mortgage lien, considered in·the light most favorable to it, the only reasonable conclusion which could be drawn therefrom was that the plaintiff had given a general consent to sales by Boylen and thus had waived its lien?*

This question is answered in the negative, from which it follows that the court erred in making the specific finding and entering judgment thereon. In order that the basis of our determination may appear, a more detailed statement of the evidence bearing upon this issue is essential.

Boylen and his wife executed two chattel mortgages, which form the basis of plaintiff's claim. The first of these was dated April 23, 1940, and secured payment of a note for $83,200.00 due October 1, 1940. The assets covered by this mortgage were 15,549 mixed lambs and 20,164 ewes. The second mortgage, dated June 19, 1940, secured payment of a note for $56,810.00 payable October 1, 1940, and the assets covered by it were 9198 mixed

lambs and 11,873 ewes. This second chattel mortgage was negotiated for the purpose of financing the purchase by Boylen of additional pairs (ewes with lambs). In connection with each of the mortgages plaintiff made a physical inspection and actual count of the sheep to be mortgaged, and the mortgages were recorded in compliance with Oregon law. They provided that the mortgagor would not permit the mortgaged property "to be encumbered, sold or removed from the premises where the said property is now located, without the written consent of the Mortgagee."

May 1, 1940, Boylen entered into a marketing agreement with Culp & Sons Sheep Co. of Salt Lake City, Utah, under the terms of which the latter agreed to market Boylen's "entire lamb crop from approximately 20,000 ewes, except whiteface ewe lambs." The contract included the following provision: "It is understood that first party [Boylen] may be in a position to make an advantageous sale of said lambs before they are disposed of by second party. In that event and only in that event first party may, upon written notice first given to and received by second party, sell said lambs, provided however * * *."

In the contract the assignor of plaintiff was named as holder of a chattel mortgage upon the lambs. It was further provided therein that upon sale of any of the lambs by Culp & Sons, payment would be made to Boylen and the mortgagee jointly. The authorized representative of plaintiff in all the transactions with Boylen was one Lockhart, who, by written instrument, approved the marketing agreement with Culp & Sons as follows: "In reply to your letter of May 8th, we do approve the contract under which Tom Boylen, Jr. has engaged Culp & Sons to sell his lambs, original copy of which is enclosed. * * *" Although this consent to sell through Culp & Sons antedated the second mortgage, it is clear that plaintiff enlarged the consent to include sale of sheep covered by the second mortgage. In one of the

provisions of that instrument specific reference was made to the first mortgage and it was stated that, "This mortgage is to be construed as an extension" thereof, and, "Said mortgages shall be construed together as one mortgage and the notes secured thereby as one debt."

June 19, 1940, Boylen contracted to sell 10,000 lambs to defendants and, in so far as the five causes of action now before this court are concerned, deliveries to defendants in Oregon began June 27, 1940, and ended August 8, 1940. Defendants made no search of public records to ascertain whether the lambs were mortgaged, and relied upon the representation of Boylen that they were free of encumbrance. The sale to defendants was not handled through Culp & Sons. Payment of the purchase price was made direct to Boylen, and plaintiff received no part thereof. Boylen left the neighborhood and his whereabouts are unknown. The amount of his default to plaintiff was $66,574.44. At no time did plaintiff give Boylen express permission to sell mortgaged lambs to anyone except as provided in the marketing agreement with Culp & Sons. If a general consent is to be invoked against plaintiff it can be found only by inference drawn from the correspondence between Lockhart and Boylen, and the conduct of the parties. To sustain the judgment such inferences must be so clear as to warrant only one conclusion, to wit, that plaintiff intended a general consent.

At the time defendants purchased Boylen's lambs they had no knowledge whatever concerning any of his correspondence with plaintiff, and their conduct in disposing of the lambs was not induced, nor in any manner influenced, by reliance upon any of the facts which they now contend amounted to a waiver of plaintiff's lien. No element of estoppel therefore exists in this case.

The correspondence between Boylen and Lockhart, which defendants assert establishes conclusively a waiver of the liens of the chattel mortgages, consists of seven instruments dated on or prior to the date of the execu-

tion of the first chattel mortgage. Four of these were letters or statements signed by Boylen and addressed to Lockhart negotiating for the loan. Two of them were instruments signed by Lockhart and addressed to Boylen, and one was the statement of an inspector for plaintiff in which the following question and answer appeared: "Q. Does borrower understand sales proceeds must be remitted? A. Yes."

In addition to the foregoing, Lockhart communicated with Boylen by phone, letter or telegram approximately fifteen times following the execution of the first chattel mortgage. The date of the last communication was September 20, 1940. Boylen, during this period, wrote two letters to Lockhart, and his secretary sent one telegram. In the communications preceding the making of the loan, Boylen indicated that the loan would be retired from the sale of lambs. In addition to raising sheep on his own account, Boylen was well known as a dealer in sheep. He bought lambs for resale and acted as a broker for others, on commission. The only sheep covered by the mortgages in question were those produced and raised by Boylen on land owned or leased by him. Lockhart, in his correspondence with Boylen, made inquiries concerning sales of lambs covered by the mortgage. He expressed disappointment that the indebtedness secured by the mortgages was not being liquidated as anticipated by the sale of lambs, and asked for detailed information as to when the mortgagee might expect to receive proceeds from sales to apply on the loan.

In July, 1940, Boylen transmitted four checks totalling the sum of $25,200.11. Three of these checks represented proceeds from sales of lambs conducted by Culp & Sons and were issued by that agency. The fourth check, for $8,656.00, was drawn on Boylen's personal account and in connection with this check it is argued that when the mortgagee accepted the same it must have known that a sale had been made by Boylen out-

side the Culp agreement, and that by failure to protest against this sale a waiver of the lien was shown.

In explanation of his correspondence with Boylen, and as bearing on the issue as to whether a general consent to sales by Boylen was given, Lockhart testified that, in writing to Boylen concerning sales and contemplated sales, he believed that they would be made under the agreement with Culp & Sons; that he did not give express consent to sales of the mortgaged property apart from the said marketing agreement; that he never intended a general consent that Boylen himself could sell; that it was his understanding that the Culp agreement covered the marketing of all the lambs mortgaged to plaintiff; and that Culp & Sons would protect the mortgagee by including it as a payee on the checks covering the sale price of the lambs.

The testimony of Lockhart would seem to be supported by the facts that the mortgages provided for a consent in writing before a sale of the mortgaged property could be made; that the written approval of the Culp & Sons agreement had been given prior to any of Lockhart's letters relating to sales and the proceeds thereof; and that the said marketing agreement covered all the lambs in which plaintiff had a lien interest.

We think that the inferences which might be drawn from all the evidence bearing upon the question of waiver might differ materially in the minds of reasonable men. The issue was submitted to the jury under proper instructions and there was ample evidence to support the verdicts.

In *Ziegler v. Ilfeld,* 52 Colo. 275, 122 Pac. 56, our court said, inter alia:

"A purchaser of mortgaged chattels may show that the sale was made by the mortgagor with the consent of the mortgagee. If such consent is shown, the mortgagee is barred of his right to set up his mortgage against the title of the purchaser. (Citing authorities.)

"Authority given the mortgagor of chattels by the

mortgagee to sell the mortgaged property and account to the mortgagee for the proceeds of the sale may be inferred. *Such authority depends upon the intent of the parties and is a question of fact for the jury.*" (Emphasis supplied.)

A waiver is the "voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit." *People ex rel. v. Watrous,* 121 Colo. 282, 215 P. (2d) 344.

In *First National Bank of Strasburg v. American State Bank of Brighton,* 73 Colo. 254, 215 Pac. 473, it was claimed that waiver of a chattel mortgage lien was shown by correspondence between mortgagor and mortgagee. Our court there said:

"The sale of the mortgaged property took place on November 15, 1920. As showing that plaintiff bank consented to the sale, the defendants point to a letter of plaintiff's cashier to the mortgagor, Llewellyn, dated September 25, 1920, wherein the writer thereof says:

" 'Note what you say about selling the cattle. The market is not of the best, but hope you will get a good price for your stock.'

"Our attention is also called to a letter of plaintiff to the mortgagor, written October 5, 1920, wherein plaintiff says:

" 'Let me know how soon you expect to move your wheat and when you will be selling some live stock.'

"This correspondence does not show consent to sell all of the mortgaged property at once, including the hogs and the farming implements, not mentioned in the above quoted letters. *It does not even show consent to sell wheat and the live stock without first letting the plaintiff know of the contemplated sale.*" (Emphasis supplied.)

■ While additional authority might be cited in support of our conclusion on the question, it would unnecessarily lengthen an opinion already cumbersome. The

cases above cited are sufficient to indicate that error was committed by the trial court in holding as a matter of law that plaintiff had waived its lien.

██ Second: *Were the chattel mortgages void as a matter of law for indefiniteness and uncertainty in that the mortgaged property was insufficiently described; or that they attempted to describe a lesser number of sheep out of a larger number answering the same general description; or because said mortgages described sheep with the same brand used in previous mortgages to other persons?*

This question is answered in the negative. In the mortgages, the sheep covered thereby were described by setting forth a specific number of animals of a certain age and breed. The age classification consisted of eight groups. The animals were further identified by the statements: "These sheep are branded with one or more of the brands indicated below. It is the intent and purpose of this mortgage to cover all of the above described sheep whether unbranded and/or branded [here were reproduced seven separate brands]." The mortgaged property was further identified in the instruments as being all the sheep owned or leased by Boylen, "now located on owned or leased land * * * in Umatilla county and/or County of Morrow, State of Oregon * * *." This description was sufficient under the laws of Oregon and Colorado, and the generally recognized rule. *Elwert v. Hansen,* 89 Ore. 399, 173 Pac. 939; *Klug v. Munce,* 40 Colo. 276, 90 Pac. 603; 14 C.J.S. 674.

The trial court committed no error in holding, as a matter of law, that the mortgages sufficiently described the mortgaged property.

A portion of the challenge to the validity of plaintiff's lien, which is raised by the question under discussion, is based upon defendants' claim that sheep owned by Thomas & Peavey, Glen Culp, "Pinky" Boylen, Bob Mc-Greer, the Vey estate, and other unidentified persons, were being run and included within the operations of

Tom Boylen at the time the mortgages in question were executed, and that plaintiff's mortgages described, not only Boylen's sheep, but also the sheep of these other owners. Defendants further assert that some of these sheep were subject to prior mortgages in which references were made to identical brands, and they conclude from this that it was impossible to determine with particularity from the mortgage description which of the sheep described were Boylen's, and that the mortgages were therefore invalid for inadequacy of description.

 In considering the question of adequate description of the mortgaged property, we limit our inquiry to a determination of whether the lambs actually purchased by defendants were sufficiently described. Defendants' argument upon the points raised by the question under discussion indiscriminately lumps together sheep of every age classification, from lambs to aged ewes. This cause, however, involves nothing but "blackface Oregon feeder lambs" born in the spring of 1940.

Even though we assume an insufficient description of sheep not involved in this case, there was ample evidence to establish that the only lambs here involved were taken exclusively from the ranges designated in the first mortgage executed by Boylen. Under proper instruction the jury so determined. "An insufficient description of a portion of the property covered by the mortgage does not render the mortgage invalid as to the part which is correctly described." 14 C.J.S. 659; 10 Am. Jur. 754.

 Third: *Was there sufficient evidence tending to prove that the lambs purchased by defendants were included within the property covered by the chattel mortgages?*

This question is answered in the affirmative. Admittedly, the burden of proof rested upon the plaintiff to establish that the particular lambs purchased by defendants were subject to its mortgages. It is true that no witness testified to the manner in which any of these

lambs were branded, nor did any witness identify any particular lamb or particular shipment as being the identical animals theretofore counted and specifically included within the number of sheep upon which the mortgages were placed.

Defendants contend that there is no competent evidence supporting the verdicts of the jury that the lambs in the five separate shipments to defendants were mortgaged. With this contention we cannot agree. Much of the evidence is circumstantial and shows that only lambs mortgaged to plaintiff were shipped to defendants from Meacham, Oregon; in June, July and August, 1940; nevertheless it is sufficient to support the findings of the jury, and the trial court did not commit error in refusing to direct a verdict on the ground that the lambs purchased by defendants were insufficiently identified as those covered by the mortgage.

Fourth: *Was plaintiff's eighth cause of action barred by the three-year statute of limitations of the State of Utah?*

 This question is answered in the negative. On behalf of defendants it is argued that the statute of limitations of the State of Utah bars actions "for taking, detaining or injuring personal property * * *," after the expiration of three years. August 8, 1940, Boylen wired defendants that he was on that date shipping to them 641 blackface feeder lambs. This shipment was received by defendants at Ogden, Utah, August 10th. They sold these lambs on the 10th or 11th of August, and on August 12th paid the balance of the purchase price due Boylen. Upon these facts defendants contend that if plaintiff had any interest in the 641 lambs involved in the eighth cause of action, any conversion by defendants of said property occurred in Ogden, Utah, on the 10th or 11th of August when the lambs were resold by them. It is argued that under the laws of Utah any suit for conversion of these lambs was barred on the 12th of August, 1943, and since the instant action was not in-

stituted until the 20th day of March, 1944, the action is barred by the statute. It further is contended that the shipment of August 8th was made to defendants as a market agency and not otherwise. The basis for thus distinguishing this shipment from other shipments made by Boylen to defendants, is his telegram dated August 8, 1940, which reads as follows: "Shipped today for sale from Meacham singles 36384 and 36442 and double 36093 containing 640 good blackface feeders weight 43920 pounds. Extra good weighing conditions. We have heavy call here today for both fats and feeders. Get price boost if possible. Can you use ten or twelve loads smooth fine bend loading September 5 at seven fifteen."

It was expressly provided in the contract, under which defendants agreed to buy 10,000 lambs from Boylen, that delivery would be made in Oregon. The shipment in question was delivered to defendants, f.o.b. Meacham, Oregon, and all freight charges from the loading point were paid by defendants. The free-on-board provision of the agreement between Boylen and defendants in relation to the eighth cause of action constituted the railroad carrier the agent of defendants from the moment that Boylen delivered the lambs to such rail-road. In *Lamar Alfalfa Milling Co. v. Bishop,* 80 Colo. 369, 250 Pac. 689, this court said: "In the absence of any agreement to the contrary, delivery to the carrier is delivery to the consignee. *Hill v. Fruita Merc. Co.,* 42 Colo. 491, 497, 94 Pac. 354, 126 Am. St. Rep. 172; *Cary v. Williams,* 47 Colo. 256, 260, 107 Pac. 219, 135 Am. St. Rep. 219; 35 Cyc. 193; 4 Elliott on Railroads, (3rd Ed.) § 2127."

In the instant case the Union Pacific Railroad Company, as agents of defendants, took possession of the lambs involved in the eighth cause of action. The conversion of the lambs took place at Meacham, Oregon, on delivery to the railroad for shipment to Ogden, Utah. The removal of the lambs from the State of Oregon was inimical to the rights of the mortgagee and was pro-

hibited by the terms of the mortgages, and defendants had constructive notice thereof. 10 Am. Jur. 847; 14 C.J.S. 822. Hence the statute of limitations of the State of Utah has no application to this case.

In directing reversal of the judgment of the trial court, we bear in mind the reasons which prompted it to submit the issues to the jury for determination, and thereafter ruling upon the motion for a directed verdict. The trial court in its findings and judgment said: "The court reserved decision on the motions of defendants for directed verdicts for the reasons stated at the time, which need not be repeated here. As the matter now stands, if an appellate court should disapprove of this court's findings and judgments, the verdicts of the jury would be before them, unassailed by plaintiff, and the reviewing court could, if it wished, order judgment entered in accordance with those verdicts, no other errors being shown, thus avoiding another long trial with attorneys and witnesses present from several States."

Since we disapprove the findings and judgment of the trial court, and since no other errors appear which would require a retrial, the judgment is reversed and the cause remanded with directions to reinstate the verdicts of the jury and enter judgment consistent therewith.

It is apparent that much time has been permitted to elapse since this case began. We direct attention to the fact that in this court the case was not made ready for study and determination until October 27, 1952.

Mr. Justice Bradfield not participating.