539 P.2d 501 (1975)
The COLORADO BANK AND TRUST COMPANY, a Colorado Corporation, Plaintiff-Appellant,
v.
WESTERN SLOPE INVESTMENTS, INC., a Colorado Corporation, et al., Defendants-Appellees.
No. 74-520.
Colorado Court of Appeals, Div. II.
May 28, 1975.
As Modified on Denial of Rehearing June 10, 1975.
Certiorari Denied September 15, 1975.
*502 John L. Springer, P. C., Aurora, for plaintiff-appellant.
Woodrow, Roushar & Weaver, Frank J. Woodrow, Montrose, for defendants-appellees.
Selected for Official Publication.
VAN CISE, Judge.
The Colorado Bank & Trust Company sued defendants Western Slope Investments, Inc. (Western Slope), Scharf and Willden (the Partnership), and T. Willden, for wrongful withholding and conversion of property in which the bank held a perfected security interest. The bank appeals from a judgment on a jury verdict for the defendants. We reverse.
On November 20, 1970, the bank loaned $25,000 to Donald D. Liddell on a promissory note payable one year from that date.
*503 As collateral for this note, the bank took a security interest in Liddell's planted crops, farm equipment, cattle, and the products and the proceeds thereof, and filed a financing statement with the Clerk and Recorder of Montrose County.
As part of its terms, the security agreement contained the following:
"Irrespective of whether the Secured Party claims a security interest in proceeds hereunder, the Debtor will not sell or offer to sell or otherwise transfer or encumber the Collateral or any interest therein without the prior written consent of the Secured Party. The Collateral will be located at and kept at Debtor's address shown on the reverse side hereof and shall not be removed without the prior written consent of Secured Party."
Without the bank's consent, Liddell consigned 54 head of cattle covered by the security agreement to Western Slope for sale. Of these cattle, 26 head were purchased at auction October 5, 1971, by Western Slope who resold them the same day to the Partnership for $5,200. The remaining 28 head were also sold October 5, 1971, by Western Slope to Willden personally for $5,950. The net proceeds of these sales were delivered to Liddell who did not account to the bank for any portion of the funds.
In the resulting action, defendants asserted the affirmative defenses of (1) waiver of the provision in the loan agreement requiring prior written consent to sale of the collateral, and (2) ratification of the sale. Certain trial court rulings relative to these defenses form the basis of this appeal.

I. WAIVER
Over plaintiff's timely objection at trial, the loan officer who handled the Liddell transaction testified that he had never required a customer to get written approval before the sale of collateral, and that he generally relied upon the honesty of the customer to deliver the proceeds to the bank from such sales. This evidence was admitted on the defense of waiver, as representing the bank's "practice and customs" concerning prior consent to sale of cattle covered by security agreements. No other evidence on the alleged waiver was presented.
Subsequently, over the objections of the bank, in an instruction given the jury on the issue of waiver, the court stated:
"[I]n determining whether or not a waiver occurred in this case, you may consider the custom and practice of [the Bank] with respect to its banking operations on the Donald D. Liddell Loan and similar types of loans."
The bank contends that the admission of the loan officer's testimony and the giving of the instruction on waiver constitutes reversible error.
Waiver is the voluntary abandonment or surrender by competent persons of a right known by them to exist, with the intent that such right shall be surrendered and such persons be forever deprived of its benefits. Transamerica Corp. v. Merrion, 127 Colo. 100, 255 P.2d 391; People ex rel. Metzger v. Watrous, 121 Colo. 282, 215 P. 2d 344. For a waiver "there must be a clear, unequivocal, and decisive act of the party showing such a purpose." Hall v. Beymer, 22 Colo.App. 271, 125 P. 561. There was no such act here. Cf. Clovis National Bank v. Thomas, 77 N.M. 554, 425 P.2d 726.
Under the Uniform Commercial Code, the provisions of a security agreement may be supplemented by the "usage of trade," as that term is defined in the Code, § 4-1-205, C.R.S.1973, provided the express terms of the agreement and the supplement are consistent with each other. Section 4-1-205(4), C.R.S.1973. However, even assuming, without deciding, that the loan officer's testimony showed a "usage of trade," that usage would not be consistent with the terms of the security agreement and, therefore, the express terms of the agreement control. Section 4-1-205(4), *504 C.R.S.1973. Since the evidence would not support a jury finding of waiver, it was reversible error to have given the waiver instruction.

II. RATIFICATION
Defendants contend that because the check to Liddell from Western Slope in payment of the net balance due from the October livestock sales was deposited in Liddell's checking account at the bank, the bank's failure at that time to appropriate these funds constituted a ratification of the livestock sale without prior written consent. They point to the November 20, 1971, conversation with the loan officer concerning possible future sales of cows as further evidence of such ratification.
There is no evidence that any of the personnel at the bank knew of the sale of the cattle. Additionally, there is uncontroverted evidence in the record that the bank did not become aware that Liddell had sold these cattle until late January of the following year, at which time it took steps that led to this lawsuit.
The conversation in November occurred a month and a half after the sale and was not related thereto. In fact, at the conclusion of the conversation, Liddell indicated that he was not going to sell his cattle.
From the above, it is clear that there was nothing in the evidence to support the claimed defense of ratification or the references thereto in the jury instructions.

III. DAMAGES AGAINST AUCTIONEER
Western Slope also urges as an alternate basis for upholding the judgment in its favor, that auction companies should not be held liable for sale of livestock which are subject to a perfected security interest at the time of sale. It did not object when the jury was instructed that:
"An auction company that sells property in behalf of another who holds the property subject to a perfected security interest, and the purchaser thereof, are each liable to the holder of the security interest for the fair value of the property sold, regardless of whether the auction company or purchaser had actual knowledge of the existence of the security interest or the other's want of authority to sell, in the absence of facts showing acquiescence or consent on the part of the holder of the security interest."
The above instruction states the applicable law on this issue where, as here, the proceeds were turned over to the debtor. See Annot., 96 A.L.R.2d 208; Commercial Credit Corp. v. Joplin Automobile Auction Co., 430 S.W.2d 440 (Mo.App.).

IV. DIRECTED VERDICT
There being no evidence supportive of either of the defenses pleaded by the defendants, and the evidence as to the conversion and as to the amount of damages being uncontradicted, the court should have directed a verdict for the bank. See McGlasson v. Barger, 163 Colo. 438, 431 P.2d 778; Brent v. Bank of Aurora, 132 Colo. 577, 291 P.2d 391.
As to the amount of damages, the court instructed the jury in effect that, if it held for the bank, it was to bring in an award of $11,150 against Western Slope, $5,200 of that amount against the partnership, and $5,950 of it against Willden personally. None of the parties objected to that instruction, and it is supported by the evidence. As to interest, one whose property is converted is entitled to interest at the legal rate from the time of conversion. Montgomery v. Tufford, 165 Colo. 18, 437 P.2d 36; Deeb v. Canniff, 29 Colo.App. 510, 488 P.2d 93.
The judgment is reversed and the cause is remanded with directions to the district court to enter judgment for the plaintiff and against the defendants in the amounts indicated above, together with interest from October 5, 1971.
SILVERSTEIN, C. J., and KELLY, J., concur.