Betty DANYEW, Plaintiff-Appellee,

v.

James W. PHELPS,
Defendant-Appellant.

No. 81CA1120.

Colorado Court of Appeals,
Div. 1.

April 28, 1983.

Rehearing Denied June 9, 1983.

Certiorari Denied Jan. 16, 1984.

Richard J. Lesch, Denver, for plaintiff-appellee.

Richard D. Gilson, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, James Phelps, appeals a judgment and jury verdict whereby plaintiff, Betty Danyew, was awarded $1,000 in damages for wrongful eviction and $2,000 for outrageous conduct causing severe emotional distress. We affirm.

Danyew began renting a basement apartment in Jasper and Mildred Gates' home in 1967. This lease was on a month-to-month basis. Phelps acquired title to the Gates' home, including the basement apartment, by purchase at a Federal tax sale.

In a previous action between the Gateses and Phelps, the trial court found that there were defects in the Federal tax sale procedures and granted summary judgment in favor of the Gateses. However, this court, on appeal, reversed and ordered the trial court to restore title to Phelps. *Phelps v. Gates*, 40 Colo.App. 504, 580 P.2d 1268 (1978). The Gateses refused to vacate the property, and Phelps filed an unlawful detainer action. As required by statute, Phelps posted a "demand for possession"

on the property. Neither the posted notice nor the unlawful detainer complaint named Danyew, who was still residing in the basement apartment. The trial court granted Phelps a writ of restitution. This writ also made no mention of Danyew.

Phelps, a team of movers, and the sheriff's department executed the writ on August 23, 1978. The movers boxed and removed all of the Gates' and Danyew's belongings and placed them in separate piles on the front lawn.

On the day the writ was executed, Danyew was in the hospital recovering from surgery. The record reveals that Phelps was told that the basement was leased and that the tenant was hospitalized. There was conflicting evidence as to whether he was given Danyew's name. Phelps testified that because he was not told Danyew's name he did not believe that a basement tenant existed. Phelps did not go into the basement apartment to investigate, nor did he ask the sheriff to do so. If such an investigation had been conducted, Phelps would have discovered that the basement apartment had a separate entrance and a separate telephone and that the apartment was an independent living unit with a living room, bedroom, kitchen, and bathroom.

Although Danyew called a friend who, over the course of 3 days was able to move most of her personal property to a safer place, nevertheless, during the course of the eviction and the days following, numerous items were damaged or lost. Danyew was also forced to spend an additional day in the hospital since her doctor refused to discharge her because she was extremely upset and weakened by the knowledge of the eviction.

Danyew filed suit against Phelps claiming wrongful eviction and severe emotional distress resulting from Phelps' outrageous conduct. The record shows that, as of the date of trial, Danyew was still "in shock" over the incident and that, since the incident, her activities have been limited. The jury awarded $1,000 damages for wrongful eviction and $2,000 for outrageous conduct.

## I.

Phelps first claims on appeal that the trial court erred in sending the issue of wrongful eviction to the jury. We disagree.

■ At a Federal tax sale, the purchaser receives only "the right, title, and interest the party delinquent had in and to the real property ...." 26 U.S.C. § 6339 (1967). *See also Crow v. Wyoming Timber Products Co.*, 424 F.2d 93 (10th Cir.1970). Here, the Gateses, as the delinquent parties, held an interest which was subject to Danyew's month-to-month tenancy. Thus, Phelps took the property subject to that tenancy.

■ As a month-to-month tenant, Danyew was entitled to 10 days' notice, in writing, before eviction. Section 13–40–107(1)(c), C.R.S.1973. Danyew was given no notice of the eviction. Thus, the trial court properly submitted the issue of wrongful eviction to the jury.

## II.

Phelps also argues that the trial court erred by refusing to dismiss Danyew's claim for outrageous conduct and by submitting this issue to the jury. We disagree.

■ The tort of outrageous conduct was first adopted by the Colorado Supreme Court in *Rugg v. McCarthy*, 173 Colo. 170, 476 P.2d 753 (1970). The tort was defined as follows:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Liability exists where the conduct is:

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the

community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

*Rugg v. McCarthy, supra.*

If "reasonable [persons] could differ as to the outrageousness issue" the trial court must submit the issue to the jury. *First National Bank v. Collins*, 44 Colo.App. 228, 616 P.2d 154 (1980). Here, reasonable persons could find the eviction, without notice, of a hospitalized tenant to be "atrocious and utterly intolerable in a civilized community." *Rugg v. McCarthy, supra.* Thus, the issue of outrageous conduct was properly submitted to the jury.

We have reviewed the record and find appellant's remaining contentions lacking in merit.

Judgment affirmed.

STERNBERG and COYTE,* JJ., concur.