**Gerald A. COALE, Chris Coale, and Larry McCarty, Plaintiffs-Appellees and Cross-Appellants,**

**v.**

**DOW CHEMICAL COMPANY, a Delaware corporation, and American Home Products Corporation, Franklin Laboratories Division, a Delaware corporation, Defendants-Appellants and Cross-Appellees.**

**No. 83CA0723.**

Colorado Court of Appeals, Div. III.

April 25, 1985.

Rehearings Denied May 23, 1985.

Certiorari Denied Sept. 23, 1985.

Wolf & Slatkin, P.C., Walter Slatkin, Denver, for plaintiffs-appellees and cross-appellants.

Sherman & Howard, Stuart Pack, Christopher J. Koenigs, Craig Palm, Denver, for defendants-appellants and cross-appellees.

METZGER, Judge.

In this products liability case, defendants Dow Chemical Co. (Dow) and American Home Products Corporation, Franklin Laboratories Division, (Franklin) appeal the trial court's judgment entered after jury verdict for compensatory and punitive damages in favor of plaintiffs, Gerald and Chris Coale and Larry McCarty. Plaintiffs cross-appeal the trial court's refusal to grant pre-judgment interest as to the punitive damages. We affirm.

Plaintiffs are the owners of Super-Rex, a three-quarter blood Brahman, one-quarter Angus bull. Super-Rex is the only direct cross-breed offspring of Sugar Bull, who was the most renowned and highly rated Brahman bull in history. Super-Rex was a superior breeder by the time he reached the age of four, and his potential was exceptional.

Dow produces a number of products under the trade name Dursban. A solution developed by Dow specifically for the control of lice on cattle was bottled under the name of Dursban 44, and was marketed by Franklin.

In June 1980, in order to control lice on his cattle, Chris Coale purchased a bottle of Dursban 44. The label contained no warnings or restrictions concerning Dursban's use on Brahman or Brahman cross-breed cattle. Coale used the Dursban 44 in accordance with label instructions to treat Super-Rex and four other three-quarter

Brahman bulls. All the bulls had immediate negative reactions; one bull died, and Super-Rex was diagnosed as having organophosphate toxic poisoning caused by the Dursban 44. Super-Rex survived but his breeding capability was irretrievably destroyed, since he was rendered sterile and impotent.

Dursban 44 was field tested on cattle in the United States during 1975 and 1976. Other manufacturers of organophosphate products used warning labels indicating that the products were not to be utilized on Brahman cattle because such cattle have pores allowing fast chemical absorption causing toxic reactions. However, the Dursban 44 label mentioned no such limitation.

In early December 1979, defendants began receiving reports that some cattle, including Brahman cattle, were experiencing adverse reactions to Dursban 44. Dow requested Franklin to notify its sales representatives and branch managers of a "temporary halt sales" action until Dow could determine whether to continue sales of Dursban 44 to the beef-breed market. Franklin notified its distributors and its sales and branch personnel to stop all sales and shipments of Dursban 44; however, Franklin discouraged return of the product. Dow's management for Canada instituted a stop sale as of March 28, 1980, because of an inability to amend the label satisfactorily and a feeling that potential liabilities exceeded the benefits of continued sale.

In April 1980, Dow withheld press releases warning of the Dursban 44 problem, because of its concern regarding adverse publicity about Dursban 44 and other products using the Dursban name, and determined not to disseminate information to the general public unless "pressed" for it. However, on April 2, 1980, Dow's management for Canada elected to send out a news release regarding the stop sale and the negative reaction on cattle. Shortly thereafter Dow also concluded that the Dursban 44 warning label should be expanded to include warnings concerning Dursban's use on several breeds of cattle, including Brahman. Dow received EPA approval for this expanded warning in June 1980. Notwithstanding the fact that 33,000 bottles of Dursban 44 were in the marketplace, Dow ordered only 20,000 labels.

Dow and Franklin continued to receive complaints and claims that Dursban 44 was causing adverse effects and that the new label was not on bottles purchased. Dursban 44 was never recalled.

Plaintiffs sued Dow and Franklin seeking compensatory and punitive damages for the deaths of and injury to their Brahman-Angus cross-breed bulls. The jury verdict awarded plaintiffs $150,000 in compensatory damages against both defendants, $800,000 in punitive damages against Dow, and $200,000 in punitive damages against Franklin.

## I.

Defendants first contend that the trial court erred in submitting the issue of punitive damages to the jury. They assert that the evidence was insufficient to prove beyond a reasonable doubt that they had acted with a "wanton and reckless disregard of plaintiffs' rights." The record belies that assertion.

Initially, the trial court must determine whether, considering the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiffs, a reasonable jury could find beyond a reasonable doubt that plaintiffs' injury was caused by the defendants' wanton or reckless disregard of the rights and feelings of the plaintiff. *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984).

The term "wanton and reckless" means conduct that creates a substantial risk of harm to another and is purposely performed with an awareness of the risk and disregard of the consequences. *Palmer v. A.H. Robins Co., supra.* While the question of the sufficiency of the evidence justifying an award of exemplary damages is a question of law, the allowance or denial of such damages rests in the discretion of

the trier of fact. *Mince v. Butters*, 200 Colo. 501, 616 P.2d 127 (1980).

■ The record, as set out above, shows continued effort on the part of Dow and Franklin to conceal information from the consuming public regarding the possible negative effects of Dursban 44. This evidence was sufficient to present a jury question on exemplary damages.

■ The jury, as the trier of fact, determined that the defendants' behavior created a substantial risk of harm to another and was purposely performed with an awareness of risk and disregard of the consequences. There is support in the record for such a finding, and thus, it will not be disturbed on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## II.

Defendants also assert that the jury award of $800,000 as punitive damages against Dow and $200,000 as punitive damages against Franklin was grossly excessive. We conclude that the punitive damage awards were not excessive.

■ Punitive damages do not admit of precise determination; thus, the amount of an award must necessarily rest, in the first instance, with the trier of fact. *Palmer v. A.H. Robins Co., supra*. Where the record shows that the jury was properly guided by the purposes of a punitive damage award in reaching its verdict, the award will be upheld. *Palmer v. A.H. Robins Co., supra*. However, the factfinder's discretion is not absolute, and is subject to judicial scrutiny in the post-trial and appellate stages of a case.

■ Defendants argue extensively that the ratio of compensatory damages to punitive damages, six and two-thirds-to-one, requires reversal. However, ratio is no longer a factor to be considered in determining the excessiveness of a punitive damages award. *Palmer v. A.H. Robins Co., supra*.

■ The factors guiding a determination of punitive damages are: (1) the na-

ture of the act which caused the injury; (2) the economic status of the defendant; and, (3) the deterrent effect of the award on others. *Palmer v. A.H. Robins Co., supra*.

■ The jury had an abundance of evidence from which it could reasonably conclude that defendants' conduct justified a substantial assessment of punitive damages. Defendants allowed 13,000 bottles of Dursban 44 to remain in the marketplace unmarked for the specific problems defendants knew to be associated with the product. Dow had a net income of $805,000,-000. Franklin had a net income of $445,-889,000. We cannot say, under the facts presented here, that the amount of $1,000,-000 as punitive damages is excessive as a matter of law.

## III.

Defendants further contend that the trial court erred in permitting Chris Coale to testify on rebuttal that in May 1981, he returned to the same store from which he acquired the original unmarked Dursban 44 bottle and purchased a new bottle which lacked warnings regarding the product's danger to Brahman cattle. Plaintiff sought to introduce this evidence to show that, at least one year after the incident involving Super-Rex, defendants still had not changed the bottles and warning tags, and that this evidence was relevant to the issue of punitive damages. We conclude that this evidence was properly admitted.

■ Relevancy is a threshold standard which all evidentiary offerings must meet. The material elements of an exemplary damages claim are set forth in § 13–21–102, C.R.S., which authorizes an award of punitive damages if the injury to the plaintiff is "attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings." The relevancy threshold in a punitive damages claim is satisfied if the offered evidence tends to make more probable than not the existence of any of these elements.

The Colorado Supreme Court in *Palmer v. A.H. Robins Co., supra,* noted that:

" '[E]vidence of other acts of defendant than those alleged and for which damages are sought, both preceding as well as following the particular acts, is admissible under an issue of exemplary damages if so connected with the particular acts as tending to show defendant's disposition, intention or motive in the commission of the particular acts for which damages are claimed.' "

This evidence was relevant to plaintiffs' claim for exemplary damages. It demonstrated defendants' continued pattern of lack of care in properly warning consumers of the dangers involved with the use of Dursban on Brahman cattle. This evidence makes more probable than not the existence of defendants' wanton and willful conduct and therefore was properly admitted.

### IV.

Plaintiffs cross-appeal, asserting that the trial court erred in refusing to grant prejudgment interest as to punitive damages. We agree with the trial court that prejudgment interest on the punitive damages was inappropriate.

The right to interest, independent of an agreement to pay it, is statutory. Section 5–12–102, C.R.S. (1984 Cum.Supp.). Statutory interest relates to an ascertained principal sum and cannot be awarded on an unliquidated claim. *Davis Cattle Co. Inc. v. Great Western Sugar Co.,* 544 F.2d 436 (10th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977); *Yeager Garden Acres, Inc. v. Summit Construction Co.,* 32 Colo.App. 242, 513 P.2d 458 (1973). Section 5–12–102, C.R.S. (1984 Cum.Supp.) authorizes prejudgment interest where money or property has been "wrongfully withheld," in an amount which "fully recognizes the gain or benefit realized by the person withholding such money or property...."

The prevailing rule in other jurisdictions is that prejudgment interest is generally disallowed on punitive damages. *See, e.g., Belinski v. Goodman,* 139 N.J.Super. 351, 354 A.2d 92 (1976); *Blake v. Grant,* 65 Wash.2d 410, 397 P.2d 843 (1964), and cases cited therein. Prejudgment interest is assessed on tort judgments because the defendant has had the use, and the plaintiff has not, of liquidated amounts constituting the damage plaintiff suffered. The interest is compensatory and is awarded to indemnify the plaintiff for the loss of earnings on that money due to its delayed payment.

However, an award of punitive damages is unliquidated until the date of judgment. *Ali v. Jefferson Insurance Co.,* 5 Ohio App.3d 105, 449 N.E.2d 495 (1982). It does not exist until the trier of fact ascertains and assesses that the plaintiff is entitled to such damages and the trial court enters judgment thereon. *First Security Bank v. J.B.J. Feedyards, Inc.,* 653 P.2d 591 (Utah 1982). The award of punitive damages is to punish and deter such conduct in the future, not to compensate for the wrongful delay in obtaining money or property. *See Barnes v. Lehman,* 118 Colo. 161, 193 P.2d 273 (1948). Thus, neither the language nor the purpose of the statute upon which plaintiffs rely justifies awarding prejudgment interest on the award for punitive damages.

We therefore conclude, in accordance with our interpretation of § 5–12–102, C.R.S. (1984 Cum.Supp.), and the prevailing view in other jurisdictions, that prejudgment interest cannot apply to punitive damage awards, and that the trial court was correct in so ruling.

Judgment affirmed.

ENOCH, C.J., and TURSI, J., concur.