Gary VOGEL and Kitchen Kraft Manufacturing, Inc., a Colorado corporation, Plaintiffs-Appellees,

v.

CAROLINA INTERNATIONAL, INC., a Delaware corporation, d/b/a in Colorado as Century Housing Corporation, Defendant-Appellant.

No. 83CA1097.

Colorado Court of Appeals, Div. I.

Nov. 14, 1985.

Wood, Herzog, Osborn & Bloom, P.C., Charles S. Bloom, Fort Collins, for plaintiffs-appellees.

Smart, DeFurio, Brooks, Eklund & McClure, Susan M. Thevenet, Sidney B. Brooks, P.C., Marcia S. Krieger, Denver, for defendant-appellant.

KELLY, Judge.

In this action for conversion and outrageous conduct, the defendant, Carolina International, Inc., doing business as Century Housing Corporation (Century), appeals from a judgment entered on a jury verdict in favor of plaintiffs, Gary Vogel (Vogel) and Kitchen Kraft Manufacturing, Inc. (Kitchen Kraft). Century argues that the trial court erred in denying its motion for directed verdict, in submitting issues under improper instruction, in allowing the issue of exemplary damages to go to the jury, in failing to set aside the award of exemplary damages, and in failing to dismiss Vogel's claim for outrageous conduct. We affirm.

The evidence shows that Vogel was the sole shareholder, president and general manager of Kitchen Kraft, a corporation which manufactured wooden cabinets. In December 1979, Kitchen Kraft entered into an oral contract with Century to manufacture and deliver cabinets for structures being built by Century.

After several months of doing business together, it appearing that Kitchen Kraft was having financial difficulties, Century's president contacted Kitchen Kraft and offered financial assistance. Kitchen Kraft accepted the offer and a loan was negotiated for an amount in excess of $10,000. As a result of this transaction, Century learned that Kitchen Kraft was in debt to the extent of $65,000. Kitchen Kraft exe-

cuted a promissory note and a security agreement describing equipment serving as collateral. A second loan of over $2,000 was later made by Century to Kitchen Kraft. Both promissory notes were payable on April 17, 1981.

On March 9, 1981, Century's general manager set up an appointment for Vogel to come to Fort Morgan on March 11 to meet with him to discuss the possible relocation of Kitchen Kraft. When Vogel arrived in Fort Morgan, he was advised by Century personnel that the general manager had gone to Wyoming on an emergency. In fact, the general manager had gone to the Kitchen Kraft facility in Windsor, Colorado, with several trucks, to pick up Kitchen Kraft's equipment. Vogel was not informed about Century's conduct and did not discover it until his return to Kitchen Kraft.

During Vogel's visit in Fort Morgan, he had a conversation with Century's president, who informed him that payment of the promissory notes on April 17, 1981, would be satisfactory. Century assured Vogel that it did not feel insecure about the notes and did not expect payment until the following month on the date the notes were due.

Meanwhile, at the Kitchen Kraft plant, Century's general manager told Kitchen Kraft's employees that Vogel had agreed to move the plant to Fort Morgan. The Century employees cut the telephone lines and pulled other lines from the wall so that no calls could be made to Vogel. They then proceeded to take all the office equipment that would fit into the trucks. No attempt was made to differentiate between secured property and unsecured property.

When Vogel returned, he found that there was nothing left with which to operate the business. There was not a tool remaining, nor any tables, saws, or hammers in the factory with which to manufacture cabinets. Vogel testified that, as a consequence, he suffered severe emotional depression, accompanied by vomiting, fever, and an inability to function. His testimony was confirmed by that of his wife.

The trial court denied the defendants' motion for directed verdict at the close of the evidence, overruled defendants' objections to numerous instructions, and declined to give the defendants' four tendered instructions. The jury returned a verdict in favor of Kitchen Kraft on the conversion claim for $18,743.36 actual damages and $73,000 exemplary damages. It also returned a verdict in favor of Vogel for outrageous conduct for $16,040. Century's post-trial motions were denied.

## I.

Century first contends that the trial court erred in submitting the issues to the jury and in denying its motion for directed verdict at the close of the evidence. We disagree.

### A.

■ Century's initial argument is that the trial court erred in denying its motion for summary judgment. The denial of a motion for summary judgment is not reviewable. *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114 (Colo.1981).

### B.

Relying on § 4–9–503(1), C.R.S., and the provisions of its security agreement, Century argues that its taking of Kitchen Kraft's property was a lawful repossession of equipment listed in the security agreement. Although the jury was instructed that Century had legal cause to be insecure, Century objects to the further language in that instruction that Century had a legal right to repossess, "unless the right to repossess was waived by the conduct of [Century]." There was, says Century, no evidence of waiver on which to base such an instruction. The argument lacks merit.

■ A waiver is a voluntary abandonment of a known right, with the intent that such right shall be surrendered and such persons be forever deprived of its benefit. *Transamerica Corp. v. Merrion*, 127 Colo. 100, 255 P.2d 391 (1953). Waiver requires a clear, unequivocal, and decisive act of a

party showing such purpose. *Colorado Bank & Trust Co. v. Western Slope Investments, Inc.,* 36 Colo.App. 149, 539 P.2d 501 (1975). Whether inconsistent actions of the parties manifest an intent to waive is a factual determination, *Cordillera Corp. v. Heard,* 200 Colo. 72, 612 P.2d 92 (1980), and questions of fact are for the jury. *Short v. Kinkade,* 685 P.2d 210 (Colo.App. 1983).

■ Here, the evidence shows that at the time it made the loans Century was aware of Kitchen Kraft's many financial difficulties. However, Century continued to advance credit and to do business as usual throughout the relationship. Century gave no indication to Kitchen Kraft that it was going to change its course of conduct or that it would no longer tolerate Kitchen Kraft's financial difficulties. Indeed, it is undisputed that the notes were not yet due and that Century reassured Vogel that it would be satisfied if the notes were paid when due, and this occurred at the very time it was repossessing the collateral in lieu of payment of the promissory notes. On this state of the evidence, the issue of waiver was properly submitted to the jury.

### C.

Century also contends that, because Kitchen Kraft did not respond to Century's notice of intent to retain secured property within the required 21 days, as required by § 4–9–505(2), C.R.S., Kitchen Kraft waived the right to possession of the collateral, and the trial court should have directed a verdict as to the claim of conversion. This argument also lacks merit.

Under § 4–9–505(2), C.R.S., a creditor may retain the collateral in satisfaction of the debt if the creditor gives written notice to the debtor of this intention, and if the debtor fails to object after notice. *Brown v. Baker,* 688 P.2d 943 (Alaska 1984). If the debtor objects within 21 days of receipt of notification, the secured creditor must dispose of the collateral under § 4–9–504, C.R.S.

■ The trial court instructed the jury that the creditor's notification "must be within sufficient time to allow a commercially reasonable sale in the event the debtor objects." Century claims that this instruction is in error because there is no requirement in § 4–9–505(2) that the creditor's notification be timely. We conclude that the jury was properly instructed.

■ To constitute notice under § 4–9–505(2), the secured party must act in good faith and must take those steps a reasonable person would take to effect good faith notice. *Begay v. Foutz & Tanner, Inc.,* 95 N.M. 106, 619 P.2d 551 (1979). A secured party who retains repossessed property for an excessive period of time without compliance with the statutory provisions may not profit by the failure to furnish the requisite notice. *See Moran v. Holman,* 514 P.2d 817 (Alaska 1973).

Here, the facts show that, even though Kitchen Kraft had written a letter to Century within a few days after the repossession, demanding the return of the equipment, Century did not send a written notification to Kitchen Kraft until six months after the repossession and after this suit had been commenced by Kitchen Kraft. Under these circumstances, the question whether there was a good faith effort by Century to notify Kitchen Kraft was properly submitted to the jury under proper instruction.

### II.

Century contends that the trial court erred in submitting the issues of exemplary damages to the jury, and in failing to set aside the award of exemplary damages returned by the jury. We disagree.

### A.

Century's initial argument is that the evidence was insufficient to establish exemplary damages beyond a reasonable doubt as required by § 13–25–127(2), C.R.S., in that there was no evidence of malice or other evil motives. Citing *American National Bank v. Etter,* 28 Colo.App. 511, 476

P.2d 287 (1970), Century argues that the taking of property under a claim of right is not sufficient grounds upon which to base an award of exemplary damages. Century contends that here, as in *Colorado Kenworth Corp. v. Whitworth*, 144 Colo. 541, 357 P.2d 626 (1960), it, as creditor, was acting under a mistaken claim of right. We are satisfied that there was sufficient evidence to submit the issues to the jury and to support its findings to the contrary.

At the heart of Century's argument is its assertion that the waiver of its right to repossession, as found by the jury, does not rise to the level of "malice or insult, or a wanton and reckless disregard of the injured party's rights" mandated by § 13–21–102, C.R.S., for the award of exemplary damages. This argument overlooks the evidence and inferences available from it which support the jury verdict.

■ There is abundant evidence in this record to show that Century's taking of the property was not an exercise of rights under the Uniform Commercial Code. The promissory notes which were secured by the security agreement were not yet due. Century took everything in the Kitchen Kraft factory without any effort to select those items listed on the security agreement. This action effectively shut down Kitchen Kraft, rendering it unable to do business. Moreover, this result was achieved by holding Kitchen Kraft's chief executive officer and manager incommunicado and by depriving its employees of the means to reach him. This evidence is sufficient to show malice beyond a reasonable doubt.

#### B.

Century's argument that the trial court should have set aside the award of exemplary damages rests on the proposition that the award is excessive and does not bear a reasonable relationship to the actual damages. We cannot say that the exemplary damage award here is excessive.

■ It is true that a claim for exemplary damages under § 13–21–102, C.R.S.,

is auxiliary to the underlying claim for actual damages, and that exemplary damages may be awarded only in an action in which actual damages are assessed for the legal wrong done to the injured party. *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984); *but see Coale v. Dow Chemical Co.*, 701 P.2d 885 (Colo.App.1985) (*cert. denied*, September 23, 1985). It is also true that the statute authorizes an award of reasonable exemplary damages only. It does not follow, however, that the reasonableness of an award of exemplary damages is to be determined solely by a mathematical ratio between the exemplary and the actual damages.

■ While the relationship between actual and exemplary damages is a factor to be considered in determining reasonableness, *Frick v. Abell*, 198 Colo. 508, 602 P.2d 852 (1979), the reasonableness of the award must "be ascertained by examining the facts of the case to discover if the jury was impermissibly motivated by prejudice or properly guided by the purposes for exemplary damages," namely, to deter and punish wrongful conduct. *Palmer v. A.H. Robins Co., supra.* The additional factors to be considered are (1) the nature of the acts causing the injury; (2) the economic status of the defendant; and (3) the deterrent effect of the award on others. *Palmer v. A.H. Robins Co., supra; Leo Payne Pontiac, Inc. v. Ratliff*, 29 Colo.App. 386, 486 P.2d 477 (1971), *rev'd on other grounds*, 178 Colo. 361, 497 P.2d 997 (1972). The award here is consonant with these standards.

■ Continuing its argument that exemplary damages must be proportionate to actual damages, Century claims that the exemplary damages must be reduced because the actual damages include an award for the conversion of that portion of the property legally repossessed. Therefore, it is said, the exemplary damages should be proportionately reduced. Even if we were to accept the propriety of such a proportionate reduction of damages, a matter which we do not here decide, the contentions are unavailing. The jury decided, on

supporting evidence, that Century waived its right to repossess the property and that the total taking was a conversion. Hence, there is no foundation for reduction of damages. *See Soneff v. Harlan,* —— P.2d —— (Colo.App. No. 83CA0445, August 15, 1985).

### III.

Finally, asserting five arguments to support its claim, Century contends that the trial court erred in failing to set aside the jury's award of damages to Vogel for outrageous conduct. The arguments lack merit.

### A.

Century first argues that Vogel's claim for outrageous conduct was founded on his status as sole shareholder, officer, and director of Kitchen Kraft. Citing *Box v. Roberts,* 112 Colo. 234, 148 P.2d 810 (1944), Century claims that Vogel, as such shareholder, officer, and director, has no independent claim for relief for torts committed against the corporation. This argument is without support in the record.

The third claim for relief in the third amended complaint sets forth unequivocally Vogel's personal claim for outrageous conduct. These allegations cannot be interpreted as resting upon Vogel's status as sole shareholder, officer, and general manager of Kitchen Kraft.

### B.

Century next asserts that the sole act upon which outrageous conduct might be premised was the seizure of Kitchen Kraft's property and that, therefore, Vogel failed to prove the series of acts required to establish outrageous conduct. Conceding that, under some circumstances, outrageous conduct may be established by proof of a single act, Century nevertheless argues that, in creditor-debtor relationships, proof of the claim requires evidence of a pattern or series of abuses.

Even if we assume that a series of outrageous acts is required, we conclude that the evidence here showed such a pattern of conduct. Century continues to argue that it was Kitchen Kraft's benefactor, that its motives were pristine and its intent sublime. While we agree that these were available inferences from the evidence, they are not the inferences selected by the jury, and there was a plethora of other inferences from which the jury could conclude that the behavior was outrageous.

Century's seizure of Kitchen Kraft's equipment was not merely a seizure of equipment; it was also the destruction of Vogel's livelihood and the value of his stock. Vogel had personally guaranteed Kitchen Kraft's indebtedness, a fact known to Century. In view of the evidence that Century had undertaken to intimidate Vogel into working for Century, on Century's terms, there was sufficient evidence to support a finding of a pattern of behavior amounting to outrageous conduct.

### C.

Century again asserts that it was legally entitled to repossess the property itemized in the security agreement and that there was, therefore, no basis for the claim for outrageous conduct. We find no basis in the record for Century's claim that its seizure of the property in the security agreement was a legal repossession. On the contrary, the jury found that Century had waived its right to repossess and that the repossession was, therefore, a conversion. However, even if it were true that a portion of the property had been legally repossessed, the claim for outrageous conduct is not barred. It is not the fact of seizure which gives rise to the claim for outrageous conduct, but the manner in which the seizure was effected. *See Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292 (Colo.App.1982).

### D.

Century also complains that Vogel failed to prove a causal connection between his emotional distress and Century's conduct. The thrust of this argument is that there

was no expert testimony to establish this causal connection.

Century relies on *Ark Valley Alfalfa Mills, Inc. v. Day*, 128 Colo. 436, 263 P.2d 815 (1953), in which an award of both actual and exemplary damages was held to be excessive where there was no medical testimony indicating the extent of the plaintiff's injuries. We do not regard that case as standing for the proposition that there must be expert testimony of causation to support an award of damages for injuries suffered in a tort case. Rather, the reversal of the judgment in *Ark Valley* was premised upon the insufficiency of the evidence of damages, not on the insufficiency of the evidence of causation.

■ Here, Vogel's testimony alone was sufficient to establish causation. While there was, as Century argues, evidence of other circumstances which could have contributed to Vogel's emotional distress, this does not necessarily militate against the conclusion that it was ultimately Century's behavior, in the chronological order of events, which caused Vogel's injuries. The choice of inferences in such a case is the province of the jury.

E.

Finally, Century argues that the award to Kitchen Kraft of damages for conversion is the only recovery to which Vogel is entitled, and that an award to Vogel of damages for outrageous conduct in addition gives Vogel double recovery and inflicts double penalty upon Century. Essentially, the argument is that, because exemplary damages and an award for outrageous conduct are both punitive in character, there may be only one recovery based on a given set of circumstances. We disagree.

■ We do not dispute the fact that both exemplary damages and damages for outrageous conduct are directed toward deterrence and punishment of wrongful conduct. *See Palmer v. A.H. Robins Co.*, *supra*; *Danyew v. Phelps*, 676 P.2d 707 (Colo.App.1983). However, Century's argument that there may be only one recovery against a single defendant for the purpose of accomplishing deterrence and punishment, if applicable at all, pertains only in those cases in which there is a single victim of the wrongful conduct and there are duplicitous theories of recovery. *Cf. Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985). However, we hold that where, as here, there are multiple plaintiffs, each of whom is a victim of the wrongful behavior based on the same set of circumstances giving rise to different theories of recovery, double punishment of the perpetrator of the injuries is not precluded.

IV.

■ In the final section of its brief, Century contends that the trial court erred by excluding certain evidence, by giving erroneous instructions to the jury, and by failing to dismiss plaintiffs' claims for trespass and lost profits prior to trial. These arguments are itemized without argument or citation of authority except by reference to a 35-page brief in support of Century's motion for new trial in the trial court. The burden is upon the party asserting error to establish it, *Hinshaw v. Dyer*, 166 Colo. 394, 443 P.2d 992 (1968), and we are not disposed to augment the opening brief by reference to the record. *See Coolidge v. People*, 72 Colo. 35, 209 Pac. 504 (1922).

The judgment is affirmed.

PIERCE, J., concurs.

BABCOCK, J., specially concurs.

BABCOCK, Judge, concurring.

I concur with the majority, but write separately to state my view that the ratio of compensatory damages to punitive damages is no longer a factor to be considered in determining the reasonableness of a punitive damage award. Indeed, in reliance on *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984), this was our holding in *Coale v. Dow Chemical Co.*, 701 P.2d 885 (Colo.App.1985) (*cert. denied*, September 23, 1985). The Supreme Court's denial of

certiorari indicates to me that *Coale* properly construed *Palmer.*

Although a claim for punitive damages under § 13–21–102, C.R.S., is ancillary to the underlying claim for actual damages, its function is punitive, and thus, its focus is upon the conduct of the wrongdoer. *See Palmer v. A.H. Robins Co., supra.* Consideration of (1) the nature of the act which caused the injury; (2) the economic status of the defendant; and (3) the deterent effect of the award on others permits full judicial scrutiny of the reasonableness of an award of punitive damages consistent with the function and focus of the punitive damages statute. *See Palmer v. A.H. Robins Co., supra; Coale v. Dow Chemical Co., supra.* I would not regraft upon these three factors the archaic consideration of a ratio of punitive to compensatory damages, which in my view, bears no rational relationship to the reasonableness of an award of punitive damages.