Gage and Barbara BEHUNIN, et al., Plaintiffs,

v.

DOW CHEMICAL COMPANY, et al., Defendants.

Civ. A. Nos. 86–K–281, 86–K–331, 86–K–526, 86–K–680, 86–K–1178, 86–K–1234, 86–K–1900 and 86–K–2566.

United States District Court, D. Colorado.

Dec. 29, 1986.

Frank D. Plunkett, Jr., Richard E. Young, P.C., Denver, Colo., and Robert J. Tansey, Jr., William E. Dorigan, David E. Oslund, Janet Pollish-Forsberg, Kristin N. Lockhart, Alfred H. Edwall, Jr., Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., Garth Rogers, Donald E. Johnson, Allen, Rogers Metcalf & Vahrenwald, Fort Collins, Colo., Darwin Poyfair, Richard Laungesen, Philip Lorenzo, Anderson, Campbell, Laugensen, James A. Clark, Darwin Poyfair, Baker & Hostetler, Denver, Colo., Wiley Daniel, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., Alan F. Pendleton, Terrence E. Bishop, Robins,

Zelle, Larson & Kaplan, Minneapolis, Minn., Robert Connelly, Issacson, Rosenbaum, Woods, Levy & Snow, Denver, Colo., A. Craig Fleishman, Haligman, Zall, Lottner, Englewood, Colo., Dean R. Vanatta, Vanatta and Sullan, P.C., Eugene R. Commander, Hall & Evans, Denver, Colo., plaintiffs.

Walter A. Steele, Michael L. O'Donnell, Sandra L. Spencer, White & Steele, P.C., Denver, Colo., Bruce D. Drucker, J. Richard Hoel, Jr., Dale R. Crider, Hillary Anschel, Rivkin, Radler, Dunne & Bayh, Chicago, Ill., Stanley A. Doten, Morrison & Foerster, Denver, Colo., Leonard L. Rivkin, James B. Rather, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### INTRODUCTION

Plaintiffs in these consolidated actions seek damages arising from the manufacture and marketing of a product called Sarabond. Sarabond was designed to increase the bond strength between brick and mortar. The product, however, allegedly corrodes metal materials used in construction.

Many claims for relief have been alleged. They include strict liability in tort, breach of warranty, negligence, negligent misrepresentation, fraud, breach of continuing duty to warn, punitive damages, and treble damages under various provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

As expected from litigation of this magnitude, several pending motions await decision: Dow Chemical Company's (Dow's) motion to dismiss and strike the complaint in 86–K–281; Dow's motion to dismiss or for a more definite statement on the fraud claim (claim number six) in 86–K–680; Dow's motion to dismiss the RICO claims (claims one through three) in 86–K–331, 86–K–526, and 86–K–680 and to dismiss the

fraud claim in 86–K–331; and Dow's motion to dismiss the RICO claims (claims one through three) in 86–K–1178 and 86–K–1234 as well as to dismiss the fraud claim (number 6) in 86–K–1178 and 86–K–1234.[1]

■ An amended complaint has been filed, with leave of the court, in 86–K–680. The amended complaint moots Dow's motion to dismiss or for a more definite statement in that case. Therefore, that motion is denied.

The other motions make several common arguments. Rather than resolve each motion separately, I will decide them by subject matter. The first area to be discussed is dismissal of the RICO claims. RICO allegations are found in claims nine through sixteen of 86–K–281 and in claims one through three of 86–K–331, 86–K–526, 86–K–680, 86–K–1178, 86–K–1234 and 86–K–2566. The complaint in 86–K–1900 does not assert any RICO claims.

The second area of analysis will center on Dow's motion to dismiss the fraud claims in 86–K–331, 86–K–1178, and 86–K–1234. The final portion of the opinion will address the five non-RICO arguments Dow has propounded in its motion to dismiss and strike the complaint in 86–K–281.

### THE RICO CLAIMS

All the federal RICO claims raised in the consolidated complaints assert a cause of action under the different subsections of 18 U.S.C. § 1962. Each subsection requires a finding of the existence of a pattern of racketeering activity. I fully examined the meaning of the phrase "pattern of racketeering activity" in *Garbade v. Great Divide Mining and Milling Corporation,* 645 F.Supp. 808 (D.Colo.1986). A complaint which sets forth only one fraudulent scheme does not allege a pattern of racketeering activity. *Id.* at 815. A multiplicity of underlying predicate acts cannot constitute a pattern of racketeering activity where the acts are only directed toward

---

1. Several motions relating to discovery are also pending. I will endeavor to rectify the discovery disputes in a subsequent order.

accomplishment of a single fraudulent scheme. *Id.*

■ *Garbade* is controlling here.[2] Succinctly put, the consolidated complaints, even taken at their best, allege only a single scheme of Dow's efforts to market Sarabond for use in the construction industry. Dow has drawn my attention to the recent opinion in *Savastano v. Thompson Medical Co., Inc.*, 640 F.Supp. 1081 (S.D.N.Y.1986). Thompson was sued for its fraudulent marketing of an over-the-counter appetite suppressant called Dexatrim. The court dismissed the RICO claims, and the entire complaint, on a motion to dismiss. The court held:

> Logically, we must view defendant's alleged criminal activity as an attempt to intentionally misrepresent through packaging and advertisements the performance of a single product. As such, it could at best be characterized as "a single fraudulent effort, implemented by several fraudulent acts," ... and is insufficient to meet RICO's "pattern" requirement. *Id.* at 1085, citing *Northern Trust Bank/O'Hare, N.A. v. Inryco Co., Inc.*, 615 F.Supp. 828, 831 (N.D.Ill.1985).[3]

In determining whether a pattern of racketeering activity exists, "[t]he question is the nature of the conduct under all of the circumstances." *Torwest DBC, Inc. v. Dick, et al.*, 628 F.Supp. 163, 165 (D.Colo. 1986).[4] In taking the same legal stance as *Garbade*, *Savastano* provides a factually analogous situation to the circumstances posed by these Sarabond cases. Therefore, *Savastano* is instructive. The federal RICO claims are dismissed from all of the consolidated actions.[5]

■ Claims thirteen through sixteen in the 86–K–281 complaint are brought under Colo.Rev.Stat. § 18–17–104. This statute, a provision of the Colorado Organized Crime Control Act, is modelled after RICO. *Benson v. Colorado*, 703 P.2d 1274, 1276, n. 1 (Colo.1985). Like the federal statute, the Colorado provision requires the existence of a pattern of racketeering activity. The Colorado courts have yet to construe the pattern requirement of § 18–17–104 in a published decision. I find the pattern requirement of the state law to coincide with the meaning of its federal counterpart. Claims thirteen through sixteen are accordingly subject to the same analysis as the federal RICO claims. They are dismissed.

Claim seventeen in the 86–K–281 complaint, which alleges vicarious liability, will not be dismissed. Even if, as Dow argues, the seventeenth claim constitutes plaintiffs' "attempt to escape the separate 'person'/'enterprise' requirement" of RICO's § 1962, Dow's Brief at 37, the claim also "applies to all claims for relief in the com-

---

**2.** Plaintiffs attempt to distinguish *Garbade* because the procedural posture of my decision there was on a motion for summary judgment while the RICO claims in this case are subject to a motion to dismiss. *See Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This distinction will not salvage the RICO claims. Given the current state of the law in this circuit, the RICO claims are legally deficient under any set of facts presumed under the complaint.

**3.** Plaintiffs attest *Inryco* is no longer good law. The claim is disingenuous. A glance at Shepard's Citations reveals *Inryco* has been both criticized and followed by other courts, including courts within the Seventh Circuit. Many courts continue to cite the case in a positive vein. This phenomenom reflects the schism RICO has engendered among the lower federal courts. *See Garbade* at 815, n. 11. Until the Tenth Circuit or the Supreme Court has spoken differently on

this subject, I will continue to adopt the position taken by the other district courts of this circuit.

**4.** Plaintiffs also attempt to distinguish *Torwest* because Judge Matsch there made reference to "one victim." However, Judge Matsch's opinion did not adopt a *per se* rule that a pattern of racketeering activity necessarily exists if the fraudulent scheme has more than one victim. Rather, *Torwest* used the presence of a single victim as one factor to consider, along with all the other attendant facts and circumstances there enumerated, in determining the existence of a pattern. The identification of only a single victim may detract from a finding of a pattern, but it is not determinative. Conversely, the presence of several or many victims does not require a finding of a pattern. The key consideration is the nature of the conduct under the circumstances.

**5.** I make no comment on Dow's other moving grounds for dismissal of the RICO claims.

plaint, RICO and non-RICO." Plaintiffs' Brief at 22.

## THE FRAUD CLAIMS

■ The plaintiff in 86–K–331, Penn Square Condominium Association, "has been appointed the irrevocable attorney-in-fact for all of the fee title owners of Penn Square [Condominiums] to protect and defend any part or all of Penn Square from loss and damage by suit or otherwise." Complaint in 86–K–331, ¶ 1. Similarly, Savings Building Condominiums Association, plaintiff in 86–K–1234, is empowered to vindicate the legal rights of all the fee title owners of the Savings Building. Complaint in 86–K–1234, ¶ 1. The plaintiff in 86–K–1178, C.A. Associates, is a limited partnership doing business as the Executive Tower Building. Complaint in 86–K–1178, ¶ 1.

In all three cases, the name plaintiff represents the interests of the various owners of buildings constructed with Sarabond. Dow contends the unit owners do not fall within the class of persons intended to be influenced by any misrepresentations. Hence Dow has moved to dismiss the claim for fraud, or intentional misrepresentation, in each case.

I listed the elements of a cause of action for fraudulent misrepresentation in *Institute for Professional Development v. Regis College*, 536 F.Supp. 632 (D.Colo.1982). They are:

1) A misrepresentation; 2) of material facts; 3) that is false; 4) made with knowledge of the falsity or with indifference to its truth or falsity; 5) the party claiming fraud must have relied on the representation; 6) have had a right to have relied on it; and 7) acted in accordance with the reliance; and 8) in doing so suffer damage.
*Id.* at 633.

In *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299 (D.Colo.1984), I was faced with the general issue of "whether an entity not a party to a fraud can nevertheless state a claim for relief if the entity is [only] indirectly damaged by the fraud." *Id.* at 1308. This is an issue of local law. *Id.*

"In Colorado the law is that a complaint based on fraud can only be made by one within the class of persons intended to be influenced by the misrepresentation." *Id.;* accord *Mead & Mount Construction Company v. Fox Metal Industries, Inc.*, 511 P.2d 509, 510 (Colo.App.1973) ("[i]t is necessary only that the plaintiff be in the class of persons that the defendant intended to influence"). For example, "one may not claim to have relied upon misrepresentations contained in a report when he was not aware of the existence of the report at the time he suffered injury." *Strong v. Retail Credit Company*, 38 Colo.App. 125, 552 P.2d 1025, 1028 (1976).

Neither side to this litigation has been able to refer me to a Colorado case which may be appropriately analogized to the factual scenario posed by these Sarabond cases. Given the operative standard on a motion to dismiss,[6] I am loathe to dismiss the fraud claims absent a more developed factual record from which I can determine the proper class of misrepresented persons. In this vein, I note neither *Strong* nor *Mead & Mount* was decided on a motion to dismiss.[7] Dow's motion to dismiss the fraud claims is accordingly denied without prejudice to renew if a factual basis develops which can justify such action.

## DOW'S NON–RICO CLAIMS IN 86–K–281

Dow has presented five grounds for dismissal, in whole or in part, of the complaint in 86–K–281. I will consider each argument seriatim.

### *Failure to Allege Legal Causation*

■ Dow contends the entire complaint must be dismissed for failure adequately to allege causation. Dow points to ¶ 24 of the complaint, in which plaintiffs claim they "did not discover the dangers of Sarabond

---

**6.** *See, e.g.,* the *Conley* and *Morgan* cases cited in note 2.

**7.** *Strong* was decided on a motion for summary judgment; *Mead & Mount* was an appeal from trial.

and defendants' pattern of concealment and misrepresentation until spring of 1985." Dow then posits: "Since the alleged fraud and the product defect was [sic] still concealed in 1974, plaintiffs must have sold their businesses for reasons other than because they were defrauded." Dow's Brief at 10. Thus, Dow asserts plaintiffs' injuries were not proximately caused by any actions on Dow's part.

There is no merit to Dow's contention. By 1974 a growing concern had begun to effect itself in the Sarabond market over the corrosive properties of the product. *See, e.g.,* Complaint ¶ 22A(9). Plaintiff Gage Behunin was left to confront "various building owners experiencing problems with prefabricated panels built by the Gage Behunin Company using Sarabond." *Id., ¶ 23E(11).* Thus, Behunin experienced injury to his business because of Sarabond's defective qualities. *Id., ¶ 27.* The mere fact Dow itself had not publicly admitted Sarabond's defective characteristics by 1974 is irrelevant to the causal adverse impact the product defects, and Dow's concealment of those defects, wrought on plaintiffs' business.

The same analysis holds for plaintiffs' assertion of unawareness of the extent of the problem until 1985. Therefore, taking plaintiffs' allegations as true, *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), Dow's motion to dismiss the complaint for failure to allege legal causation must be denied.

### Outrageous Conduct

The seventh claim of the complaint in 86–K–281 is for outrageous conduct resulting in emotional distress. I examined the doctrinal outlines of this tort in *Rawson v. Sears Roebuck & Co.,* 530 F.Supp. 776, 778–781 (D.Colo.1982). "Claims for intentional infliction of emotional distress will normally only be cognizable in cases where the defendant has engaged in a pattern of conduct that either was intended to cause or recklessly did cause severe emotional distress." *Id.* at 780.

Dow cites two cases in support of its motion to dismiss the outrageous conduct claim: *Vigoda v. Denver Urban Renewal Authority,* 624 P.2d 895, 898 (Colo.App. 1980), *affirmed in part and reversed in part on other grounds,* 646 P.2d 900 (1982); and *First National Bank in Lamar v. Collins,* 44 Colo.App. 228, 616 P.2d 154, 156 (1980). Neither of those cases, however, involved a pattern of conduct such as the series of ongoing transactions and contacts which characterized the relationship between Dow and plaintiffs in 86–K–281. Complaint, ¶s 22, 23.

I find *Vogel v. Carolina International, Inc.,* 711 P.2d 708 (Colo.App.1985), a case in which the court assumed "a series of outrageous acts is required," *id.* at 714, to be more compelling under the current circumstances. The *Vogel* court sustained the jury's outrageous conduct award in a case, like the one in 86–K–281, arising from a business relationship between two companies. Plaintiff Vogel was the sole shareholder, president and general manager of the Kitchen Kraft corporation. Carolina was Kitchen Kraft's secured creditor and business contractor. Vogel's claim for outrageous conduct, however, was a personal claim. *Id.* at 714.

The similarity of the relationships between Vogel, Kitchen Kraft and Carolina, on the one hand, and Gage Behunin, the Gage Behunin Company, Inc. and Dow, on the other hand, has strong appeal at this early stage of the litigation. Given the authority posed by the *Vogel* case, I will not now deprive the jury of its right to consider whether there is any merit to the outrageous conduct claim. I cannot state definitively that reasonable minds would not differ, *Meiter v. Cavanaugh,* 40 Colo. App. 454, 580 P.2d 399, 401 (1978), as to the outrageousness presented by the pleaded facts. Dow's motion to dismiss the seventh claim is accordingly denied.

### Interference with Prospective Business Advantage

Plaintiffs' eighth claim is for tortious interference with prospective business advantage. This tort was first recognized by the Colorado courts in *Dolton v. Capitol*

*Federal Savings & Loan Association*, 642 P.2d 21 (Colo.App.1981). To sustain such a cause of action, "it is not necessary to prove an underlying contract. It is sufficient to show intentional and improper interference preventing formation of a contract." *Id.* at 23, citing *Restatement (Second) of Torts* § 766B (1979).

■ Dow avers the eighth claim is deficient in failing "to indicate that any third party refused to enter into or terminate a business relationship with the plaintiffs." Dow's Brief at 15. This contention is not correct. Plaintiffs have specifically pleaded "they enjoyed numerous business relationships and a legitimate expectancy of developing further such business relationships." Complaint, ¶ 64. Plaintiffs have also accused Dow of interfering with those relationships and expectancies. *Id.* at 67. These allegations adequately raise the specter of third party refusal to enter into or terminate a business relationship with plaintiffs. Fed.R.Civ.P. 8(a), (f).

■ Dow also insists it "must have made some false representation to, had conversations with or contacted a third party concerning the plaintiffs to their (plaintiffs') damage." Dow's Brief at 15. This contention also lacks merit. The tort does not limit the meaning of the term "interference" to actual contact between the defendant and a third party. Interference can consist of either "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation *or* (b) *preventing the other from acquiring or continuing the prospective relation.*" *Wasalco, Inc. v. El Paso County*, 689 P.2d 730, 732 (Colo.App.1984) (emphasis added), quoting § 766B of the *Restatement.* Therefore, the eighth claim properly states a claim for relief under § 766B(b) of the *Restatement.*

### Standing of Plaintiffs Gage and Barbara Behunin

The named plaintiffs in 86–K–281 are Gage and Barbara Behunin, as individuals, and Gage Behunin Company, Inc., a Colorado corporation. Gage and Barbara Behunin, husband and wife, were "at all times material" the sole shareholders of Gage Behunin Company. Complaint, ¶ 3.

Dow states plaintiffs Gage and Barbara Behunin "lack standing to assert independent causes of action for harm suffered as a consequence of their shareholder status." Dow's Brief at 42. This position is based on the legal principle "that shareholders lack standing to sue for injuries to their corporation." *Id.*

Plaintiffs do not dispute this general legal principle, which of course excludes shareholder derivative actions. Instead, plaintiffs avow an intention to seek "only damages suffered by the name plaintiffs." Plaintiffs' Brief at 25. Plaintiffs further claim Gage Behunin does not seek damages "in his capacity as a shareholder." *Id.* Dow counters this declaration with its own interpretation of the complaint: "Despite plaintiffs' characterization of their injuries they are alleging injuries resulting from their shareholder status." Dow's Reply Brief at 8. Dow supplies *Glyptis v. Mobil Oil Corp.*, No. M80–179 CA2, slip op. (W.D. Mich. June 2, 1981) (Dow's Exhibit E) in support of its position.

■ However, in contrast to the situation in *Glyptis*, slip op. at 7, Dow did at times disregard the corporate entity of the Gage Behunin Company, Inc. by dealing with Gage Behunin individually and/or independently of the Gage Behunin Company. *See, e.g.*, Complaint ¶s 18, 19, 21, and 23A(8). Thus Gage Behunin has adequately pleaded an injury independent of his status as a shareholder of Gage Behunin Company, Inc.

According to ¶ 18 of the complaint, "Gage Behunin, with encouragement and active support of Dow and Dow USA, founded Masonry Systems Incorporated" for the purpose "of licensing others to construct prefabricated masonry panels using Sarabond." Therefore, Dow additionally maintains Gage Behunin seeks damages "as the shareholder of MSI and MSI of Colorado." Dow's Brief at 42.

Gage Behunin's status as an MSI shareholder does not preclude him from bringing

actions other than on behalf of that corporation. Generally, "[c]orporate rights of action are distinct from those of the members or stockholders. The stockholder must sue on rights belonging to him as an individual, while the corporation must sue on these [sic] rights belonging to it as a corporation." *Fletcher Cyc. Corp.* § 4231 (1985). Thus Gage Behunin may, for example, sue Dow for its role in persuading him to act as the founder of MSI. Complaint, ¶ 18. In short, the complaint shows Gage Behunin wearing several hats aside from that of shareholder. Where Gage Behunin doffed the shareholder cap in favor of other headgear, he has properly asserted his rights as an individual.

In addition, neither MSI nor MSI of Colorado is a party to this action. Even without viewing the complaint in its most favorable light, there are no indications here that Gage Behunin is suing as an MSI shareholder. Therefore Gage Behunin has standing.

■ The situation is not as clear, though, for Barbara Behunin. The complaint is devoid of any allegations of contact between her and the defendants. Her name does not appear in the complaint's common allegations, the narration of events on which the substantive legal claims are based. The complaint has failed to mention her in any role but as a shareholder of the Gage Behunin Company. Complaint, 3. Moreover, plaintiffs have not responded to Dow's assertions, *see* Dow's Brief at 42, n. 3; Dow's Reply Brief at 8, n. 3, on this point. Accordingly, Barbara Behunin is not a proper party to the current complaint.

#### *Dow USA and Amspec are not Proper Parties*

Dow asks me to dismiss Dow USA and Amspec from the captioned complaint because they are not proper parties under Fed.R.Civ.P. 17(b). Dow USA is "an unincorporated operating unit" of Dow. Complaint, ¶ 6. Amspec, once a wholly-owned subsidiary of Dow, was dissolved at the end of 1975. Affidavit of L. Roger Lochhead (Dow's Exhibit G). Amspec's assets were distributed to Dow "as a liquidating dividend." Complaint, ¶ 7.

The parties have argued strenuously over the capacity of each of these defendants to be sued. I will discuss each entity separately.

#### *Dow USA*

■ In relevant part, Fed.R.Civ.P. 17(b) provides

The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, . . . .

Dow is incorporated in Delaware. Dow notes the laws of that state "do not provide for unincorporated operating units to sue or be sued." Dow's Brief at 46. Therefore Dow USA should be stricken as a name defendant. *Id.*

Plaintiffs believe a corporate operating unit should fall under the "all other cases" language of Rule 17(b). Hence Colorado law should apply. Plaintiffs concede there is no Colorado authority on point, but they declare "[t]here is Colorado authority, however, on factors to be considered" in making the determination. They cite *In re People in Interest of R.D.S.*, 183 Colo. 89, 514 P.2d 772 (1973) in this regard. I have read this case, a paternity suit, and find it to be inapplicable.

Plaintiffs also draw my attention to cases in which Dow USA has sued on its own behalf. "Defendants should not be permitted to contend that Dow USA has the capacity to sue but lacks the capacity to be sued." Plaintiffs' Brief at 26. Plaintiffs portray the question as a factual one. They promise to voluntarily dismiss Dow USA should subsequent discovery on the issue show Dow USA is not a proper party.

Finally, Dow, in reply, points out that in cases in which Dow USA has been a party plaintiff, it has served only as an operating unit of Dow. Dow has purportedly been the real party in interest in those cases. *See, e.g., Dow Chemical, USA, an Operating Unit of the Dow Chemical Company, et al. v. Consumer Product Safety Commission*, 464 F.Supp. 904 (W.D.La.1979).

Dow has the better of this dialogue. As a corporate operating unit, Dow USA is just what it says it is; namely a *unit* of Dow Chemical Company. Plaintiffs have not alleged Dow USA has any existence independent of Dow Chemical Company.

Further, anomalous results would attend my adoption of plaintiffs' position that a corporate operating unit should fall under the "all other cases" clause of Rule 17. For example, a corporation could make use of differences in the laws of the various states to bring suit by way of one of its operating units even though the corporation itself might not have the same legal capacity. Such a development would make a shambles of Rule 17, to say nothing of logic.

In addition, none of the other complaints in these consolidated actions have named Dow USA (or Amspec) as a defendant. In all likelihood, plaintiffs included Dow USA, and Amspec, among the name defendants in order to bolster the RICO enterprise allegations. Since all the RICO claims have been dismissed, the presence of Dow USA and Amspec for any such purpose has been mooted.

*Amspec*

 Amspec was a Delaware corporation. Under Delaware law, a dissolved corporation continues for three years, or for such longer period "as the Court of Chancery" shall determine, for various purposes, including defending suits. 8 Del. Code § 278.

Dow has characterized the Delaware statute as a statute of limitations. More than three years elapsed between the date of Amspec's dissolution and the date 86–K–281 was filed, and so the limitations period has run. Hence Amspec must be dismissed. Dow's Brief at 48. Dow also contends the limitations period may be extended only by the Delaware Court of Chan-

cery, and not by other courts in the exercise of their equitable powers. This position is drawn from the holding in *Pontiac Osteopathic Hospital v. Sorenson Gross Construction Company*, No. 80–204529 CK, slip op. (Mich.Cir.Ct. August 31, 1981).

This argument evoked a strong response from plaintiffs. "Contrary to defendants' assertion, Delaware case law interpreting the statute holds that Title VIII, Section 278 of the Delaware Annotated Code is *not* a statute of limitations." Plaintiffs' Brief at 27 (Plaintiffs' emphasis). Plaintiffs then cite *Smith-Johnson S.S. Corp. v. United States*, 231 F.Supp. 184 (D.Del.1964). Plaintiffs next cite cases in which they claim courts have extended a post-dissolution period because of certain policy concerns.

Plaintiffs again grasp the short end of this argument. First of all, plaintiffs have severely perverted the holding of the *Smith-Johnson* case. The *Smith* court did state the statute "is not, in itself, a statute of limitations." *Id.* at 186. However, in the very next paragraph, the court wrote:

Nevertheless, while not a statute of limitations, it is a clear expression of a legislative policy normally prohibiting the commencement of actions by or against dissolved corporations more than three years after their dissolution and, as such, by way of analogy justifies the application of decisions interpreting statutes of limitations.

*Id.*

The *Smith* court then cited statute of limitations cases in holding that a counterclaim (then called a cross-libel in admiralty cases) could not be filed against the steamship corporation because the three year period had lapsed. *Id.* at 187. This case hardly supports plaintiffs' position.

Furthermore, the other cases cited by plaintiffs [8] are either inapplicable or unper-

8. *See Schweitzer v. Conrail,* 758 F.2d 936, 944 (3rd Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (railroad workers' "future F.E.L.A. causes of action were not dischargeable claims under section 77" of the former bankruptcy act); *P.F. Collier v. FTC,* 427 F.2d 261, 271 (6th Cir.1970), *cert. denied,* 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 186 (1970)

(FTC can "subject a dissolved corporation to an injunction in order to reach a successor corporation through which unlawful practices may be continued"); *Moore v. Nicks Finer Foods, Inc.,* 121 Ill.App.3d 923, 77 Ill.Dec. 364, 366, 460 N.E.2d 420, 422 (1984) (extending post-dissolution time period for minors to within two years after attainment of majority age).

suasive in this case. The policy concerns plaintiffs profess to harbor are not present in these circumstances, because Dow is available as a solvent defendant amenable to suit. Dismissal will in no way prejudice the source or amount of plaintiffs' potential recovery. Thus, I invoke the normal prohibition on the commencement of actions against a dissolved corporation more than three years after its dissolution. *Smith-Johnson* at 186.

Moreover, policy favors the dismissal of both Amspec and Dow USA. Dismissal will dispel the fog which currently veils the true extent of the claims and parties in this potentially vast litigation. Release of Dow USA and Amspec thus promotes the twin principles of judicial economy and speedy resolution of litigation. Satisfaction of these principles favors all parties, including plaintiffs. For the same reasons, discovery on this issue would be injudicious.

### ORDER

In light of all the foregoing, I hereby ORDER as follows:

1. The motion to dismiss and strike the complaint in 86–K–281 is granted in part and denied in part. Claims 9 through 16, inclusive, are dismissed. Dow USA and Amspec are stricken as improper defendants. Barbara Behunin is dismissed as a plaintiff. Plaintiffs have 20 days from the date of this order to amend their complaint to assert Barbara Behunin's standing in 86–K–281, if they can do so within the confines of Fed.R.Civ.P. 11. Otherwise Dow's motion to dismiss and strike is denied.

2. The motion to dismiss or for a more definite statement in 86–K–680 is denied as moot.

3. The motions to dismiss the RICO claims in 86–K–331, 86–K–526, 86–K–680, 86–K–1134, and 86–K–1234, which claims are alleged in the first three claims for relief in each of those complaints, are granted. The three RICO claims in 86–K–2566 are also dismissed.

4. The motions to dismiss the fraud claims in 86–K–331, 86–K–1178, and 86–K–1234 are denied.