**In re The DOW COMPANY "SARA-BOND" PRODUCTS LIABILITY LITIGATION.**

**No. MDL 711.**

United States District Court, D. Colorado.

Aug. 7, 1987.

Darwin Poyfair, John B. Moorhead, Baker & Hostetler, Dean R. Vanatta, Scott F. Sullan, Vanatta & Sullan, Denver, Colo., for plaintiffs.

Walter A. Steele, Michael L. O'Donnell, Sandra L. Spencer, White & Steele, Denver, Colo., Joseph L. Falik, Eric H. Lipsitt, Detroit, Mich., J. Roger Lochhead, The Dow Chemical Co., Midland, Mich., Dale R. Crider, Warren S. Radler, Bruce D. Drucker, Rivkin, Radler, Dunne & Bayh, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

MDL No. 711 is before me now on Dow's Rule 12 motion to dismiss all claims brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68. Dow's motion is predicated on four separate grounds: (1) failure to allege

a pattern of racketeering activity, (2) failure to allege proximate causation between plaintiffs' injuries and the alleged RICO violations, (3) inadequate allegations of an alternative association-in-fact or other enterprise, and (4) insufficient allegations of a RICO conspiracy under 18 U.S.C. § 1962(d). Since this last ground is predicated primarily on the alleged previous three deficiencies,[1] dismissal under the fourth argument is dependent on dismissal under one or more of the other three arguments.

The RICO claims cannot be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of those claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Dow has requested oral argument on its motion, but given the copious briefing on the motion, as well as the interest accruing to all parties through prompt and expeditious resolution of this last motion outstanding in MDL No. 711, I find oral argument unnecessary. At the outset, I find the amended complaints are sufficiently pleaded to survive dismissal on the causation issue. For the reasons discussed below, the remainder of the motion, namely the pattern and enterprise issues, is granted in part and denied in part.

Because of the extensive array of positions the various circuits have taken on RICO questions, determination of these issues cannot rest on any uniform body of

federal RICO law. I must therefore decide what federal circuit's, or circuits', law to apply. Since these cases are before me pursuant to 28 U.S.C. § 1407, I shall apply the law of the transferor fora. *In re Plumbing Fixtures Litigation*, 342 F.Supp. 756, 758 (Jud.Pan.Mult.Lit.1972) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

Where jurisdiction is founded on diversity, I am to treat each case as if it were pending in the transferor district in which that case was originally filed.[2] *In re "Agent Orange" Product Liability Litigation*, 580 F.Supp. 690, 695 (E.D.N.Y.1984), *writ of mandamus denied*, 733 F.2d 10 (2d Cir.1984). The same basic principle governs the issue of what law governs a federal question in § 1407 litigation. The transferee court is obliged to apply the law of the federal circuit which encompasses the transferor federal district court. *Berry Petroleum Company v. Adams & Peck*, 518 F.2d 402, 408 n. 7 (2d Cir.1975) (applying Fifth Circuit law on rule 10b–5 in securities case).[3]

Because the law of this district, if not this circuit, currently favors Dow's position, Dow opposes the application of any law outside the Tenth Circuit. In support of this conviction, Dow pointedly observes that *Berry* and the other authorities cited in note 3 ultimately rely on *Van Dusen*, a state law case. Dow asserts "the law of a transferor forum applies only to issues concerning substantive *state* law claims and

---

**1.** Section 1962(d) makes it unlawful to conspire to violate any of the other subsections of § 1962.

**2.** When issues of state law are under consideration, such treatment entails application of the choice-of-law rule of each state in which the transferor court sits. *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 644 F.2d 594 (7th Cir.1981), *cert. denied, Lin v. American Airlines, Inc.*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981), for an example of the institution of this principle.

**3.** *Accord Sentner v. Amtrak*, 540 F.Supp. 557, 559 n. 5 (D.N.J.1982) (transferee court shall apply law of transferor forum; here relevant federal law is the same in both the transferor Second Circuit and the transferee Third Circuit); *In re Haven Industries, Inc.*, 462 F.Supp. 172, 179 (S.D.N.Y.1978) (looking to First Circuit federal securities law); *Stirling v. Chemical Bank*, 382 F.Supp. 1146, 1150 n. 5 (S.D.N.Y.

1974), *appeal dismissed on other grounds*, 511 F.2d 1030 (2d Cir.1975), *later affirmed*, 516 F.2d 1396 (2d Cir.1975) (applying Second, Third and Sixth Circuit securities law); *In re Plumbing Fixtures Litigation*, 342 F.Supp. at 758 (since "[i]t is clear that the substantive law of the transferor forum will apply after transfer," multidistrict litigation panel orders a § 1407 transfer despite plaintiff's "fear that the transferee court will not apply the laws of the circuit in which its action was filed" in deciding a question of antitrust law); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation*, 309 F.Supp. 1053, 1055 (E.D. Pa.1969) (applying law of federal judicial district of District of Columbia rather than that of Eastern District of Pennsylvania). *See also In re Air Crash Disaster at Boston, Mass., July 31, 1973*, 399 F.Supp. 1106, 1108 (M.D.Pa.1975) (a diversity case, but noting a § 1407 transferee "must apply the substantive law of the transferor state *and circuit*") (emphasis added).

has no relevancy to issues of *federal* law such as RICO." Memorandum in Support of Motion to Dismiss all RICO Claims, at 7 (emphasis in original). Dow therefore characterizes *Plumbing Fixtures'* reliance on *Van Dusen* as "erroneous." Dow Reply Brief at 3.

Accordingly, Dow disparages the cases, such as those cited in note 3, which rely on *Plumbing Fixtures.* For example, Dow discusses *In re Pittsburgh and Lake Erie Railroad Company Securities and Antitrust Litigation,* 543 F.2d 1058 (3rd Cir. 1976), in its supporting brief at 9–10. In dicta, Dow Memorandum at 10, the *Pittsburgh* court questioned the *Van Dusen* -based reliance of *Plumbing Fixture* and its progeny:

> All of these opinions assumed that the rule of *Van Dusen v. Barrack, supra,* determines the interpretation of *federal* law which the transferor district would apply. It is difficult to understand why this should be so since *Van Dusen v. Barrack* involved conflicting *state* wrongful death policies, while in theory, at least, federal law, in its area of competence, is assumed to be nationally uniform, whether or not it is in fact.
>
> *Pittsburgh,* at 1065 n. 19.

While I fully apprehend that the *Plumbing Fixtures* doctrine does not mesh neatly with its *Van Dusen* roots, I will not lightly disregard a coherent and well-established line of authority. I see no reason why the principle of *Van Dusen* cannot be incorporated, by analogy, into the realm of federal law issues in § 1407 litigation. I will not assume the federal/state law dichotomy escaped the notice of the graybeards who decided *Plumbing Fixtures, Berry,* and the authorities cited in note 3. Rather, I presume my forebears voluntarily chose to adopt the *Van Dusen* rule for questions of both federal and state law in § 1407 actions. This choice has the advantage of applying the same "law governing" analysis to both federal and state law. In addition, if federal law is truly uniform in its national scope, then adoption of the *Van Dusen* principle will occasion no difference in practice.

Application of the federal law of the transferor forum is supported by the very purpose of multidistrict litigation. Under § 1407, cases are consolidated for pretrial purposes only. While the transferee court can transfer the cases to itself for all purposes under 28 U.S.C. § 1404 should the circumstances warrant, *see* MDL No. 711 Order of July 28, 1987, 664 F.Supp. 1403, the ultimate aim of the transferee court is to return each case to its transferor jurisdiction in a state of readiness for trial. As the order of July 28, 1987 indicates, no § 1404 transfer will be effectuated here.

The transferee court's goal of priming all cases for eventual trial in the transferor courts distinguishes § 1407 litigation from § 1404 cases. The latter-type cases are transferred for trial as well as for pretrial proceedings. In that situation, at least some authorities logically decline to apply the federal law of the transferor circuit. *Satellite Financial Planning Corporation v. First National Bank of Wilmington,* 633 F.Supp. 386, 393–394 (D.Del.1986), *reconsidered on other grounds,* 643 F.Supp. 449 (D.Del.1986); *Roth v. Bank of the Commonwealth,* CCH 1981–82 *Fed. Sec.L.Rptr.* ¶ 98,267 (W.D.N.Y.1981).[4] These authorities lose their persuasive value, however, where the cases face eventual remand to the transferor jurisdictions. For instance, the *Satellite* court stated:

> The Court chooses not to face the possibility of having to disregard the established law of this District, or the anomaly of the Court of Appeals for the Third Circuit having to disagree with its own precedent on appeal because it differs from that of the District of Maryland and the Fourth Circuit.
>
> 633 F.Supp. at 393–94.

This rationale has great appeal in a § 1404 case. Yet, receipt of plaintiff's claims from a variety of jurisdictions, subsequent dismissal of the RICO claims under the law of this jurisdiction, and final remand of the remnants of each case to its place of origination for trial without the RICO claims strikes me as even more of an anomaly than the oddity noted in *Satellite.*

---

**4.** Dow's entreaty for application of the law of the transferee forum rests primarily on these two cases.

At bottom, one must recognize the reality of variation within the federal court system. Thus, for instance, I have ordered the use of the pretrial order format of the transferor jurisdictions. April 2, 1987 MDL No. 711 Conference, Transcript at 11–12. Rectification of these and more substantial variations lies with higher authority. Although I perceive a great deal of sense in applying the law of a single forum to all § 1407 issues (whether state or federal) so that the advantages of multidistrict litigation may be pursued to their logical conclusions, a change in the law lies beyond the purview of my authority. I must accept the system as it currently operates, however diffidently it serves the stated objective.

Finally, I note much of the authority cited by Dow in support of its argument for application of transferee RICO law evinces a concern with forum shopping. Some courts are understandably reluctant to disallow a § 1404 transfer simply because a plaintiff is concerned with potential differences between the transferor and transferee courts in their approach to a single issue of federal law. *See H.L. Green Company v. MacMahon,* 312 F.2d 650, 652 (2d Cir.1962), *cert. denied,* 372 U.S. 928, 83 S.Ct. 876, 9 L.Ed.2d 736 (1963) (cited by Dow); *Scheinbart v. Certain-Teed Products Corporation,* 367 F.Supp. 707, 710–11 (S.D.N.Y.1973) (cited in *Roth* as support for the proposition that a § 1404 transferee is free to adopt its own view of federal law regardless of the law of the transferor court). These courts have no sympathy for such forum shopping by a plaintiff opposing a defendant's motion for a § 1404 transfer. *Green* at 652; *Scheinbart* at 711.

In the instant § 1407 proceedings, I have yet to hear forum shopping raised as a concern. Moreover, even if a certain degree of forum shopping were a partial motivating factor for some of these MDL plaintiffs, that problem is not critical here. In this context, any displeasure I might experience with forum shopping by some individual litigants is tempered by "the expedited progression accruing to all parties, as well as the court system, through this multidistrict litigation." Order of July 28, 1987.

---

**5.** *Shelby County* awaits a conditional remand from the Clerk of the Judicial Panel on Multidistrict Litigation. *See* Rule 11(f)(i) of the Rules of

Having surveyed these arguments, I conclude the law of the transferor jurisdictions should apply to resolution of the motion to dismiss the RICO claims.

Excluding *Shelby County,* 87–K–104,[5] this MDL is currently composed of sixteen cases brought against Dow Chemical Company. Grouped by federal circuit, these cases are:

A. *Third Circuit:* (1) *County of Lancaster,* 87–K–61 (E.D.Pa.); (2) *County of Cambria,* 87–K–79 (W.D.Pa.); (3) *Moravian Development Corporation,* 87–K–208 (E.D.Pa.); (4) *Hamilton Bank,* 87–K–912 (E.D.Pa.).

B. *Sixth Circuit:* (5) *Equitable Life Assurance Society,* 87–K–65 (N.D.Ohio); (6) *Equitable Life Assurance Society,* 87–K–490 (N.D.Ohio); (7) *Board of Education of the Memphis City Schools,* 87–K–875 (W.D.Tenn.).

C. *Eighth Circuit:* (8) *S H Properties, Inc.,* 87–K–297 (W.D.Mo.).

D. *Tenth Circuit:* (9) *Behunin,* 86–K–281 (D.Colo.); (10) *Penn Square Condominium Association, Inc.,* 86–K–331 (D.Colo); (11) *Burns,* 86–K–526 (D.Colo.); (12) *C.A. Associates,* 86–K–1178 (D.Colo.); (13) *Savings Building Condominium Association,* 86–K–1234 (D.Colo.); (14) *Masonry Panel Franchising, Inc.,* 86–K–1900 (D.Colo.); (15) *Executive Tech Center, Ltd.,* 86–K–2566 (D.Colo.); (16) *State Department of Highways,* 87–K–170 (D.Colo.).

I will address Dow's motion with regard to each of these four circuits. Where circuit law is lacking, I will have recourse to the law of the federal judicial district. I will begin with the more familiar Tenth Circuit.

*Tenth Circuit*

*RICO: More Fun with Fraud?*

RICO is a recurring nightmare for federal courts across the country. Like the Flying Dutchman, the statute refuses to be put to rest. Beating against the wind, it has jettisoned an effusion of opinions which bobble in its wake. In a vain attempt to drop anchor in this sea of confusion, I have made my position known. In *Noland v. Gurley,* 566 F.Supp. 210 (D.Colo.

---

Procedure of the Judicial Panel on Multidistrict Litigation.

1983), *disapproved in Plains Resources, Inc. v. Gable,* 782 F.2d 883 (10th Cir.1986), I stated:

> I find that the purposes and intent of RICO were not directed toward the activities alleged against these defendants. Sufficient remedies are available to plaintiff under the federal and state securities laws and the common law. Plaintiff's twelfth claim for relief is dismissed. RICO is not broad enough to embrace every fraudulent action.

*Noland,* at 218.

In this MDL litigation, I have similarly remarked from the bench that "RICO is just, in my view, a rather sloppily thought out kind of way to get the Mafia that everybody jumps on so they can have more fun with fraud." April 2, 1987 Conference, Transcript at 43. Plaintiffs' lead counsel appeared to recognize this point, at least in principle:

> The guts of this case is fraud, be it garden variety for purposes of opposing some RICO motion, whatever "garden variety" fraud is, regardless of how it's characterized—there's fraud and there's an ongoing scheme or schemes—we say "schemes," if it's one scheme, then it all relates together. All of the evidence—at least to my guess 95 percent of the evidence that goes to RICO is going to be evidence that goes in on the fraud counts and the punitive damage counts.

*Id.,* Transcript at 40–41.

Such policy considerations, however, appear to have been deep-sixed by *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). *Sedima* sank some of RICO's itinerant ghouls but surfaced others. The narrow holdings of the case were twofold: (1) prior convictions on the underlying predicate criminal acts are not prerequisites to a civil RICO action, and (2) no separate "racketeering injury" requirement is necessary to maintain a civil RICO action. On this latter point, the Court held:

> If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under [18 U.S.C.] § 1964(c).... A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.

*Sedima,* at 495–96, 105 S.Ct. at 3285.

The Court also noted "RICO is to be read broadly." *Id.* at 497, 105 S.Ct. at 3286. Excessive use of the statute would have to be remedied by Congress. *Id.* at 499, 105 S.Ct. at 3287. Such excesses "appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" *Id.* at 500, 105 S.Ct. at 3287. Thus, the Court concluded: "Sedima may maintain this action if the defendants conducted the enterprise through a pattern of racketeering activity. The questions whether the defendants committed the requisite predicate acts, and whether the commission of those acts fell into a pattern, are not before us." *Id.* at 500, 105 S.Ct. at 3287.. *Sedima's* now infamous footnote 14 explored the pattern issue in further detail by directing attention to the twin competing concepts of relationship and continuity.

· *Pattern*

Like many other judges, I accepted the Court's invitation to formulate a meaningful concept of pattern. In *Technology Exchange Corporation of America, Inc. v. Grant County State Bank,* 646 F.Supp. 179 (D.Colo.1986), I reviewed *Sedima* and conducted a footnote 14 analysis. I concluded the "continuity" element of the pattern requirement was not satisfied where the sole purpose of several predicate acts was to induce plaintiff to enter into a service contract. *Technology Exchange* at 184.

In the absence of Tenth Circuit direction on the pattern question, I also made an effort to canvas the other federal district courts of the circuit. The result of that survey appeared in *Garbade v. Great Divide Mining & Milling Corporation,* 645 F.Supp. 808 (D.Colo.1986). In *Garbade,* I concluded that multiple predicate acts directed toward a single fraudulent scheme do not constitute a pattern of racketeering activity. This holding essentially followed the position taken by the Eighth Circuit in *Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986).

The basic principle espoused in *Garbade* has been reiterated in subsequent opinions in this district. *See, e.g., Omnium Erain, Inc. v. John Wohnlich, et al.,* —— F.Supp. ——, ——, No. 86–K–1371, slip op. at 4 (D.Colo. April 11, 1987) [Available on WESTLAW, DCT database] (single invest-

ment scheme implemented in several stages); *McBee v. IHSS, Inc.,* 655 F.Supp. 448, 449 (D.Colo.1987) (single fraudulent scheme relating to conditions of plaintiff's new employment); *Petrie v. United Bank of Skyline,* —— F.Supp. ——, ——, No. 86–F–1205, slip op. at 5 (D.Colo. January 7, 1987) (single scheme to defraud plaintiff by inducing him to sign promissory note).

■ Simply defining a pattern of racketeering activity as requiring more than one fraudulent scheme does not, however, end the inquiry. Under this definition, "pattern" is not meaningfully defined unless the term "scheme" is itself cloaked in some fairly determinable concept. This last task is a difficult one. The thrust of my own RICO pattern decisions has been that a "scheme" corresponds to a substantially discrete aim. or goal. At base, though, a determination of whether a pattern exists "depends on the nature of the conduct under all of the circumstances." *Garbade* at 812, citing the flagship case of *Torwest DBC, Inc. v. Dick, et al.,* 628 F.Supp. 163, 165 (D.Colo.1986), *affirmed,* 810 F.2d 925 (10th Cir.1987). Thus, the number of fraudulent schemes can only be determined on a case-by-case basis.

For example, I have interpreted Judge Matsch's opinion in *Torwest* in the following manner:

> Plaintiffs also attempt to distinguish *Torwest* because Judge Matsch there made reference to "one victim." However, Judge Matsch's opinion did not adopt a *per se* rule that a pattern of racketeering activity necessarily exists if the fraudulent scheme has more than one victim. Rather, *Torwest* used the presence of a single victim as one factor to consider, along with all the other attendant facts and circumstances there enumerated, in determining the existence of a pattern. The identification of only a single victim may detract from a finding of a pattern, but it is not determinative. Conversely, the presence of several or many victims does not require a finding of a pattern. *The key consideration is the nature of the conduct under the circumstances.*
> *Behunin v. Dow Chemical Co.,* 650 F.Supp. 1387, 1390 n. 4 (D.Colo.1986) (emphasis added).

Precise definition of a RICO pattern has also proven to be a distasteful task for the Tenth Circuit. Indeed, only two reported decisions address the issue: (1) the affirmation of *Torwest,* and (2) *Condict v. Condict,* 815 F.2d 579 (10th Cir.1987). *Garbade* was argued on appeal on July 15, 1987 and we await decision.

In *Torwest,* the Tenth Circuit characterized the continuity element as "the threat of continuing activity." *Id.,* 810 F.2d at 928, quoting *Sedima's* footnote 14. The court opined that "[a] scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished." *Id.* at 928. This statement, I think, concurs with the position I have taken.

The *Torwest* court also noted, however, that "[a] more difficult question is presented when the RICO claim is based on one scheme involving one victim, but the plan contemplates open-ended fraudulent activity and does not have a single goal that, when achieved, will bring the activity to an end." *Id.* at 929. This language can be read to suggest, in contravention of my footnote 4 in *Behunin,* that the presence of several victims will result in a finding of a pattern.

Whether the number of victims is a crucial factor in the pattern calculus cannot, however, be deciphered. *Torwest* unfortunately "decline[d] to go beyond the facts ...to formulate a bright-line test in the abstract." *Id.* at 929. In the end, the *Torwest* panel merely found "no indication, either in the nature of the fraud itself or in any of the other circumstances suggested by Torwest DBC, that the activity here was other than an isolated incident, to which RICO does not apply." *Id.* at 929.

*Condict* similarly did not pronounce any general test, instead relying on the specific facts of the case. There, the court reiterated the analysis conducted under *Sedima's* footnote 14. After quoting extensively from its *Torwest* decision, the Tenth Circuit concluded the case before it "is but an unsuccessful effort to dress a garden-variety fraud and deceit case in RICO clothing." *Condict* at 585.

Given the absence of any definitive pronouncement by the Tenth Circuit on the meaning of a pattern of racketeering activity, I will adhere to the position taken in my previous decisions, *see Behunin* at 1390 n.

3, and attempt to determine whether a pattern exists on a case-by-case, factually-dependent basis. Such, I suggest, is the intended function of a trial court.

■ In the factual context of the case at bar, I am presented with claims arising from Dow's marketing of the product Sarabond, of the saran latex family line of products. In this vein, I have relied on *Savastano v. Thompson Medical Co., Inc.*, 640 F.Supp. 1081, 1085 (S.D.N.Y.1986),[6] in determining that the marketing of a single product constitutes only a single fraudulent scheme. *Behunin* at 1390. In *Behunin*, I therefore dismissed the RICO claims in the pre-MDL Sarabond cases on my docket. Upon commencement of this MDL litigation, however, I permitted all plaintiffs to amend their complaints to reallege, if they could do so consistent with Rule 11, their RICO claims.

Plaintiffs' amended complaints now reflect inclusion of an additional product line, that of Roofmate. The complaints adequately allege, for the purposes of a Rule 12 analysis, at least two fraudulent schemes—Dow's efforts to market two distinct lines of products. I further find the Roofmate allegations fall within the time periods contemplated by 18 U.S.C. § 1961(5). Finally, I reject Dow's position that the Roofmate scheme is of no importance here because plaintiffs do not allege Roofmate injury. *See* Plaintiffs' Opposition Brief at 35–36. Dow's motion to dismiss the Tenth Circuit RICO claims on the ground that the complaints fail to allege adequately a pattern of racketeering activity is therefore denied. Like the Tenth Circuit, I do not purport to define any universal concept of a pattern. I merely hold that under the particular circumstances of these MDL cases, the complaints pass muster under the test of *Conley v. Gibson.*

*Enterprise*

Dow's next asserted basis for dismissal is that the enterprise or association-in-fact alleged under the RICO claims arising under 18 U.S.C. § 1962(a)—(c) fails to pass muster in accordance *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299, 1303–1307 (D.Colo.1984) (discussing the enterprise question under § 1962(c)).

The complaints allege the enterprise consists of one or more of the following: (1) Dow, (2) Dow USA, an unincorporated operating unit of Dow, (3) Amspec, a dissolved wholly-owned subsidiary of Dow, (4) various employees of one or more of the above three entities, and (5) various independent contractors, engineers, and like individuals working with Dow or on Dow's behalf, in various capacities, on the public promotion of Sarabond. All of these entities or persons share the common element of promotion of Sarabond.

I first note Dow USA has no legally cognizable identity separate and apart from Dow Chemical Company itself. *Behunin*, at 1395. Second, I agree with the *Satellite* court's dubious view of the separation between a corporation and its wholly-owned subsidiary for purposes of defining a RICO enterprise. *Id.*, 633 F.Supp. at 405 n. 23. I also concur with that court's finding of a lack of sufficient differentiation between such an enterprise and the pattern of racketeering activity. *Id.*

■ I therefore find the complaints in the MDL litigation fall within the purview of *Saine* because any association between or among Dow and its employees, divisions, subsidiaries, contracting corporations, or trade associations and institutions cannot be the RICO enterprise since such an enterprise has no existence here separate from the pattern of racketeering activity. This would leave Dow as the alternative enterprise. If Dow is the enterprise, however, then it cannot also be the RICO " 'person' whom the Act penalizes." *Saine*, at 1303.

The next question faced is whether the *Saine* holding should apply to subsections (a) and (b) as well as (c). As I explained in *Saine*,

Section 1962(a) makes it unlawful to invest funds derived from a pattern of racketeering activity in an enterprise engaged in interstate commerce. Section 1962(b) prohibits the operation of or acquisition of an interest in an enterprise through a pattern of racketeering activity. Section 1962(c) makes it unlawful for any person associated with an enterprise which affects interstate commerce to conduct or participate in the affairs of

**6.** Plaintiffs assert *Savastano* may no longer represent current law within the Second Circuit. *See United States v. Ianniello.* 808 F.2d 184, 192 (2d Cir.1986), *cert. denied, Cohen v. United States,* — U.S. —, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987). I need not decide this question.

such enterprise through a pattern of racketeering activity. Section 1962(d) states that it is forbidden to conspire to violate any of the substantive provisions of section 1962.

*Saine,* at 1302.

■ Upon reviewing the statutory language of § 1962(a) and (b), I find the *Saine* rationale is not applicable to those two subsections. *See* Plaintiffs' Response Brief at 50–51, and authorities cited therein. In *Garbade,* at 811 n. 6, I noted in dictum that the subsection (c) analysis can apply to subsection (a) claims as well. The authority for that proposition was a 1984 case from the Eastern District of Pennsylvania. I can no longer consider that case to remain good law on this point in light of the Third Circuit's recent decision in *Petro-Tech, Inc. v. The Western Company of N.A.,* 824 F.2d 1349, 1360–62 (3rd Cir.1987) (following the differences between § 1962(c) and § 1962(a) noted in *Haroco, Inc. v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), *affirmed,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)). The same rationale holds between § 1962(b) and § 1962(c). Therefore, Dow's motion to dismiss will be granted as to the § 1962(c) Tenth Circuit claims, but not as to the § 1962(a) or (b) claims.

As for the analogous claims under the Colorado Organized Crime Control Act, only those claims arising under Colo.Rev. Stat. § 18–17–104(3) shall be dismissed. *See Behunin* at 1390 (since COCCA is based on RICO, I will construe it the same way).

### Third Circuit

#### Pattern

On the basis of the Third Circuit's recent decision in *Petro-Tech,* Dow's motion to dismiss the Third Circuit RICO claims for failure to allege a pattern of racketeering activity is denied.

#### Enterprise

Judge Huyett's December 4, 1986 memorandum opinion and order in *Moravian,* 87–K–208, is hereby adopted as the law of the case on this issue. In the interests of salvaging some consistency from the lagan of these decisions, this order is also adopted for all of the other MDL No. 711 cases stemming from the Eastern District of Pennsylvania, namely case nos. 87–K–61

and 87–K–912. On the basis of the recent *Petro-Tech* decision, as well as *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628, 633–34 (3rd Cir.1984), the transferor judges in those cases may decide to dismiss or direct a verdict on the § 1962(c) claims upon remand. For now, all claims shall stand.

Similarly, Judge Simmons' oral order on November 24, 1986 in *Cambria,* 87–K–79, is adopted as the law of the case. Whether he chooses to dismiss any of the RICO claims will be determined at trial upon remand.

### Sixth Circuit

#### Pattern

I have not found post-*Sedima* authority on the pattern issue in this circuit. However, since the RICO claims survive under the restrictive tests of *Fulmer* and the District of Colorado, I believe they would also survive in the Sixth Circuit. The motion is denied on this ground.

#### Enterprise

For 87–K–875 (W.D.Tenn.), the motion to dismiss is also denied on this ground, on the basis of *Media General, Inc. v. Tanner,* 625 F.Supp. 237, 243 (W.D.Tenn.1985). *See also* Judge Gibbons' Order Granting Motion to Reconsider in *Shelby County,* 87–K–104 (W.D.Tenn.1986). The order is published in CCH *RICO Business Disputes Guide* ¶ 6473 (W.D.Tenn. December 18, 1986).

The motion is also denied for 87–K–65 and 87–K–490, both transferred from the Northern District of Ohio. *Van Dorn Company v. Howington,* 623 F.Supp. 1548, 1554 (N.D.Ohio 1985).

### Eighth Circuit

#### Pattern

The motion to dismiss is denied, on the basis of *Fulmer.*

#### Enterprise

Here, only the § 1962(c) claims will be dismissed. *Hanline v. Sinclair Global Brokerage Corporation,* 652 F.Supp. 1457 (W.D.Mo.1987), *appeal dismissed without opinion,* 815 F.2d 713 (8th Cir.1987).

Accordingly, IT IS ORDERED that Dow's motion to dismiss the RICO claims is granted in part and denied in part. Specifically,

(1) all claims arising under 18 U.S.C. § 1962(c) and Colo.Rev.Stat. § 18–17–104(3) are dismissed from those MDL cases arising in the District of Colorado (Nos. 86–K–281; 86–K–331; 86–K–526; 86–K–1178; 86–K–1234; 86–K–1900; 86–K–2566; 87–K–170);

(2) all claims arising under 18 U.S.C. § 1962(c) are dismissed from 87–K–297.

Otherwise, the motion is denied.